(December 12, 1896.)

## COUNTY OF ADA v. BULLEN BRIDGE COMPANY.
### [47 Pac. 818.]

COUNTY COMMISSIONERS—ISSUANCE OF UNAUTHORIZED WARRANTS—ACTION TO CANCEL.—Where a board of county commissioners have issued warrants upon the treasury of the county, without authority of law, and in violation of the provisions of the constitution, an action to cancel such warrants will lie.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Hawley & Puckett, for Appellant.

Johnson & Johnson, W. E. Borah and George H. Stewart, for Respondent.

For authorities cited by attorneys in this case, see post, pp. 188-192, both inclusive, where the case was reheard.

HUSTON, J.—This is an appeal from an order and judgment of the district court of Ada county sustaining a demurrer to plaintiff's complaint. As the case rests upon demurrer to the complaint, we have thought best to set forth the complaint as the same appears in the record:

## "COMPLAINT.

"The plaintiff complains and alleges:

"1. That plaintiff is a political subdivision of the state of Idaho, and a county of said state.

"2. That the defendant the Bullen Bridge Company is either a copartnership composed of individuals unknown to plaintiff, an association of persons whose names. and residences are to plaintiff unknown, or a corporation, the members and officers of which and the place where organized being to plaintiff unknown; and plaintiff asks permission, when it is ascertained whether or not said Bullen Bridge Company is a partnership or association or corporation, to amend its complaint accordingly.

"3. That the defendant the First National Bank of Idaho is a corporation organized and existing under the laws of the United States, and doing business in Ada county, state of Idaho.

"4. That the Falk-Bloch Mercantile Company is a limited corporation, organized and existing under the laws of the state of Idaho, and doing business in Ada and Canyon counties, Idaho.

"5. That the real names of the defendants John Doe and Richard Roe are unknown to plaintiff, and plaintiff asks leave to insert the real names of said defendants in the place of said fictitious names when said real names are ascertained.

"And for a first cause of action herein the plaintiff alleges: That on the twenty-first day of July, 1891, at Boise City, in Ada county, state of Idaho, the board of county commissioners of said Ada county, at a special session of said board, held at said place, made and entered into a contract in writing with the defendant the Bullen Bridge Company, which said contract was signed by C. T. Bilderback, chairman of said board, in be-

half of said board, and by C. A. Bullen, as agent, in behalf of of said Bullen Bridge Company, which said contract was and is in words and figures following, to wit:

" 'This contract, made this twenty-first day of July, A. D. 1891, by and between the Bullen Bridge Company of Pueblo, Colorado, party of the first part, and the board of county commissioners of Ada county, and state of Idaho, party of the second part, witnesseth: ·That the said party of the first part contracts and agrees to and with the party of the second part to build, paint, and make complete, and have ready for use by the 1st of March, 1892, for the party of the second part, the substructure, superstructure, and approaches for a wrought-iron highway bridge over the Boise river,· near Boise City, county of Ada, state of Idaho. Said bridge to be built in one span two hundred and ten feet in length, with one twenty-two foot apron at each end, and to have one roadway thirty feet wide in the clear. Substructure to consist of iron cylinder piers as shown by plans. All the materials for said bridge, including abutments, piers, and approaches, are to be furnished by the party of the first part, and are to be of good and suitable quality; and the work is to be done in a thorough, workmanlike manner in accordance with the plans, specifications, and profile on file in the auditor's office, and forming a part of this contract. And the party of the second part contracts and agrees to pay to the party of the first part the sum of twenty-two thousand ($22,000) dollars. Payment to be made for said bridge in warrants drawn on the general bridge fund as follows, viz.: $13,000 on the delivery of the iron material for said bridge at Boise City, $5,500 on the completion of the substructure, and the remaining $3,500 on the completion and acceptance of said bridge. And the party of the first part will not be held responsible for unavoidable accidents or delays in transportation, or for the elements.

 (Signed)    " 'THE BULLEN BRIDGE COMPANY,
       " 'By C. A. BULLEN, Agent.

    " 'C. T. BILDERBACK,
" 'Chairman Board of County Commissioners, Ada County,
 Idaho.'

"That the total income and revenue provided for said Ada county for the said year 1891 was the sum of $60,697.49, and for the year 1892 was the sum of $72,978.95. That the total amount of income and revenue provided for the general bridge fund of said Ada county, for said year 1891, was the sum of $1,538.68, and for the year 1892 was the sum of $8,792.84. That prior to the issuance of the first of the warrants hereinafter referred to and provided for in said contract, warrants of said Ada county upon the general bridge fund of said county had been duly and regularly allowed, order drawn and given over to the owners thereof in an aggregate sum equal to the amount in each fund for the year 1891. That the revenue and income of said Ada county for said years 1891 and 1892 raised for and appropriated to and placed in the other funds in the treasury of said county was duly and regularly appropriated and used during said years in paying the current expenses of said county, and in taking up warrants of said county drawn on such funds.

"2. That on the twenty-fifth day of February, 1892, in accordance with the terms of said contract, warrants numbered 94 to 106, inclusive, drawn on the general bridge fund of said county, each of said warrants being for the sum of $1,000, and making the aggregate sum of $13,000, were duly issued to the defendant the Bullen Bridge Company, and by said defendant, and through its agent, Charles A. Bullen, drawn and accepted. That on the seventh day of April, 1892, warrants numbered 109 to 113, inclusive, each in the sum of $1,000, and warrant numbered 114, in the sum of $500, on the general bridge fund of said Ada county, and aggregating the sum of $5,500, were duly issued to the defendant the Bullen Bridge Company, by reason of and under the terms of said contract, and by said defendant accepted. That on the eighteenth day of April, 1892, warrants numbered 143, 144 and 145, in the sum of $1,000 each, and warrant numbered 146, in the sum of $500, and aggregating the sum of $3,500, were duly drawn in accordance with the terms of said contract on the general bridge fund of said county, and issued to the defendant the Bullen Bridge Company, and accepted by said defendant. That the aggregate

amount of said warrants issued under said contract and accepted by said defendant was and is the sum of $22,000.

"3. That no question relating to the making of said contract or the issuance or delivery of said warrants, or any of them, was ever submitted to a vote of the electors of said Ada county, and no provision was ever made for the collection of an annual tax sufficient to pay the interest on said warrants, or to provide a sinking fund for the payment of the principal thereof, and no provision at said time or since has been made for the payment of either the principal or interest of said warrants; and that, as plaintiff is informed and believes, and therefore alleges, said contract was beyond the power of the said board of county commissioners to make, and was null and void; and that said indebtedness and liability incurred against said county by reason of the issuance and delivery of said warrants, and each of them, was and is null and void; and that said warrants, and each of them, which have not heretofore been paid, were and are null and void.

"4. That said warrants numbered 94, 95, 96, 97, 98, and 99, each in the sum of $1,000, and aggregating the sum of $6,000, have heretofore been paid out of the revenues of said Ada county for the years 1891, 1892 and 1893, but that the remainder of said warrants, numbered 100 to 106, inclusive, and 109 to 111, inclusive, and 143 to 146, inclusive, and aggregating the sum of $16,000, are still unpaid.

"5. That the defendants the First National Bank of Idaho, the Falk-Bloch Mercantile Company, C. A. Bullen, John Doe and Richard Roe, the names of the last two defendants being to the plaintiff unknown, as heretofore set forth, own or claim and pretend to own, as plaintiff is informed and believes, and therefore alleges, some interest in said warrants, the exact interest being to plaintiff unknown.

"6. That to allow said warrants to remain outstanding impairs the credit of plaintiff, and also prevents plaintiff from bonding its legal indebtedness, and is against the interests of plaintiff and its inhabitants.

"And for a second cause of action herein plaintiff complains and alleges:

"1. That on the ninth day of August, 1892, at Boise City, in Ada county, state of Idaho, the board of county commissioners of said Ada county, at a special session of said board, held at said place, made and entered into a contract in writing with the defendant the Bullen Bridge Company, which said contract was signed by C. T. Bilderback, chairman of said board, in behalf of said board and by C. A. Bullen, as agent, in behalf of said Bullen Bridge Company, which said contract was and is in words and figures following, to wit:

" 'This contract made this ninth day of August, A. D. 1892, by and between the Bullen Bridge Company, of Pueblo, Colorado, party of the first part, and the board of county commissioners of Ada county, and state of Idaho, party of the second part, witnesseth: That the said party of the first part contracts and agrees to and with the party of the second part to repair the south approach to the new bridge across Boise river at Boise City, county of Ada, and state of Idaho. Said repairs to consist of a skew span of one hundred and five feet in length, with a clear roadway of thirty feet, to be placed on the present cylinder piers at the south end of the present span, and on five-foot cylinder piers at the south end of the new span. All material for said bridge, including cylinder piers at the south end of new span, with necessary bulkhead for earth fill at south end, are to be furnished by the party of the first part, and are to be of good and suitable quality, and the work is to be performed in a thorough, workmanlike manner in accordance with the plans and specifications for same on file in the auditor's office, and which form a part of this contract. Said work to be completed on or before December 1, 1892. And the said party of the second part contracts and agrees to pay the party of the first part the sum of thirteen thousand six hundred and ninety dollars ($13,690), payment to be made for said bridge in warrants drawn on the general bridge fund as follows, viz.: $8,900 on delivery of the iron material for said bridge at Boise City, $3,400 on completion of the substructure, and the remaining $1,390 on completion and acceptance of the work. And the party of the first part will not be held responsible for delays caused from

labor troubles, unavoidable accidents or delays in transportation, or from the elements.

(Signed)    " 'C. T. BILDERBACK,
" 'Chairman Board of County Commissioners Ada County,
· Idaho.

" 'THE BULLEN BRIDGE CO.,
" 'By C. A. BULLEN, Agent.'

"That the total income and revenue provided for said Ada county for said year 1892 was the sum of $72,978.95, and for the year 1893 was sum of $66,482.66. That the total amount of income and revenue provided for the general bridge fund of said Ada county for said year 1892 was the sum of $8,792.84, and for the year 1893 was the sum of $13,302.53. That prior to the issuance of the first of the warrants hereinafter referred to and provided for in said contract, warrants of said Ada county upon the general bridge fund of said county had been duly and regularly allowed, order drawn, and given over to the owners thereof in amount greater than the total amount of said fund provided for in said year 1892, and the year 1893 also. That the revenue and income of said Ada county for said year 1892, raised for and appropriated to and placed in the other funds in the treasury of said county, was duly and regularly appropriated and used during said year in paying the current expenses of said county, and in taking up warrants of said county drawn on such funds.

"2. That on the twenty-third day of February, 1893, in accordance with the terms of said contract, warrants numbered 64 to 66, inclusive, drawn on the general bridge fund of said county, each of said warrants being for the sum of $1,000, and making the aggregate sum of $3,000, and warrant No. 67, for $400, were duly issued to the defendant the Bullen Bridge Company, and by said defendant, and through its agent, C. A. Bullen, drawn and accepted. That on the eleventh day of March, 1893, warrants numbered 69 to 76, inclusive, each in the sum of $1,000, and warrant numbered 77, in the sum of $900, on the general bridge fund of said Ada county, and aggregating the sum of $8,900, were duly issued to the defendant the Bullen Bridge Company by reason of and under the terms of said contract, and by said defendant accepted. That on the

tenth day of April, 1893, warrant numbered 79, in the sum of $1,000, and warrant numbered 80, in the sum of $390, and aggregating the sum of $1,390, were duly drawn in accordance with the terms of said contract on the general bridge fund of said county, issued to the defendant the Bullen Bridge Company, and accepted by said defendant. That the aggregate amount of said warrants issued under said contract and accepted by said defendant was and is the sum of $13,690.

"3. That no question in relation to the making of said contract or the issuance or delivery of said warrants, or any of them, was ever submitted to a vote of the electors of said Ada county, and no provision was ever made for the collection of an annual tax sufficient to pay the interest on said warrants, or to provide a sinking fund for the payment of the principal thereof, and no provision at said time or since has been made for the payment of either the principal or interest of said warrants; and that, as plaintiff is informed and believes, and therefore alleges, said contract was beyond the power of the said board of county commissioners to make, and was null and void; and that said indebtedness and liability incurred against said county by reason of the issuance and delivery of said warrants, and each of them, was and is null and void, and that said warrants, and each of them, which have not heretofore been paid, were and are null and void.

"4. That all of said warrants, aggregating the said sum of $13,690, are still unpaid.

"5. That the defendants the First National Bank of Idaho, the Falk-Bloch Mercantile Company, C. A. Bullen, John Doe, and Richard Roe, the names of the last two defendants being to the plaintiff unknown, as heretofore set forth, own or claim and pretend to own, as plaintiff is informed and believes, and therefore alleges, some interest in said warrants, the exact interest being to plaintiff unknown.

"6. That to allow said warrants to remain outstanding impairs the credit of plaintiff, and also prevents plaintiff from bonding its legal indebtedness, and is against the interest of plaintiff and its inhabitants.

"Wherefore plaintiff prays that said warrants mentioned in said first cause of action, and now unpaid, to wit, warrants on

the general bridge fund of said county numbered 100 to 106, inclusive, 109 to 113, inclusive, and 109 to 114, inclusive, and 143 to 145, inclusive, all of the issue of 1892, and that each and every of them, be adjudged and decreed to be null and void, and not binding or legal obligations of Ada county, and that the said warrants, and each and every of them, be ordered to be returned to the proper officers of said Ada county, and be canceled. And that said warrants in the second cause of action mentioned and described, to wit, warrants on the general bridge fund of said Ada county of the issue of the year 1893, and numbered 64 to 67, inclusive, and 69 to 77, inclusive, and 79 and 80, and each and every of them, be adjudged and decreed to be null and void, and not binding on said Ada county, or a legal obligation thereof; and that each and every of said warrants be ordered returned by the defendants to the proper officers of said Ada county for cancellation; and plaintiff prays further for judgment for costs of this action.

> "HAWLEY & PUCKETT,
> "Attorneys for Plaintiff."

Duly verified. Filed July 6, 1895, at 4:35 P. M.

To this complaint, defendant the Falk-Bloch Mercantile Company filed a disclaimer. The other defendants filed general demurrers. Upon a hearing in the district court upon the complaint and demurrers, the demurrers were sustained, and, plaintiff declining to amend, judgment was entered in favor of defendant, from which this appeal is taken.

This is an action in equity, seeking and praying the cancellation of certain warrants upon the treasury of the plaintiff county upon the alleged grounds that the same were issued illegally, and in violation of constitutional provisions. By the issue raised by the demurrer the first question we are called to pass upon is, Conceding the facts to be as stated in the complaint, can the plaintiff maintain this action? It is contended by defendants that an action for the cancellation of written instruments will not lie upon the state of facts set up in the complaint —in other words, that, the plaintiff having a plain, speedy and adequate remedy at law, equity will not intervene; and several decisions of this court are cited in support of this contention. Let us examine the cases cited. In the case of *Picotte v. Watt,*

3 Idaho, 447, 31 Pac. 805, this court decided that "where the statute provides a plain, speedy, and adequate remedy, it must be pursued." If our statutes provide any plain, speedy and adequate remedy at law for the county against the payment of warrants, illegally or fraudulently issued by order of its board of commissioners, we have been unable to find it. It is the opinion of this court that the provisions of section 1776 of the Revised Statutes, do not apply to a case where the county is seeking to protect itself against the illegal or fraudulent acts of its board of commissioners in the issuance of warrants. And we think there will nothing be found in the other decisions of this court in any way contravening this view. Touching the general jurisdiction of equity in this class of cases, Professor Pomeroy (2 Pomeroy's Equity Jurisprudence, sec. 910) says: "It is impossible, especially in the United States, to formulate any universal rules concerning the extent or the exercise of the equitable jurisdiction in matters of fraud, since the decisions of different states are directly at variance with respect to its existence and extent, and since its exercise must depend to a great extent upon the circumstances of particular cases, and even upon the temperaments and opinions of individual judges." When we supplement these words of the learned jurist with the admonitions of our own statutes, often repeated, that we are, in avoidance of all technicalities, to administer the law for the promotion of justice, we are unable to recognize the contention of defendants that "a municipal corporation is estopped, after a warrant upon its treasury has been issued, to set up the defense of *ultra vires,* or fraud, or want or failure of consideration." That it may maintain a bill in equity to cancel warrants illegally issued is, we think, conclusively established by the authorities.

Section 3 of article 8 of the constitution of Idaho provides as follows: "Sec. 3. No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring

such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same.    Any indebtedness or liability incurred contrary to this provision shall be void; provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."    The complaint avers "that the total amount of income and revenue provided for said Ada county for the year 1891 was the sum of $60,697.49, and for the year 1892, was the sum of $72,978.95, and for the year 1893 was the sum of $66,482.66; that the income and revenue provided for the general bridge fund of said Ada county for said year 1891 was the sum of $1,538.68, and for the year 1892 was the sum of $8,792.84, and for the year 1893 was the sum of $13,302.53; that prior to the issuance of the first warrants, hereinafter referred to, and provided for in said contract, warrants of said Ada county upon the general bridge fund of said county had been duly and regularly allowed, order drawn, and given over to the owners thereof in the aggregate sum equal to the amount in each fund for the year 1891; "that the revenue and income of said Ada county for said year 1892 raised for and appropriated to and placed in other funds in the treasury of said county was duly and regularly appropriated and used during said year in paying the current expenses of said county, and in taking up warrants of said county drawn on such fund"; "that no question relating to the making of said contract, or the issuance or delivery of said warrants, or any of them, was ever submitted to a vote of the electors of said Ada county, and no provision was ever made for the collection of an annual tax sufficient to pay the interest on said warrants, or to provide a sinking fund for the payment of the principal thereof; and no provision at said time or since has been made for the payment of either the principal or interest of said warrants."    And the truth of these allegations is admitted by the demurrer.    It would seem that the board of county commissioners had given the usual consideration to the provisions of the constitution and the statutes which those enactments receive at their hands.

Respondents urge that the incurring of the indebtedness in question, and the issuance of the warrants in payment thereof,

are authorized by section 11 of the act of March 13, 1891 (Laws 1st Sess., pp. 193, 194), which is as follows: "Whenever it appears to the board of commissioners that the road fund is or would be unreasonably burdened by the expense of construction and maintenance, and repair of any bridge or road, they may in their discretion, cause a portion of the aggregate cost or expense to be paid out of the general fund of the county, and they may levy a special tax, not exceeding one-fourth of one per cent, on the taxable property of the county, annually, until the amount appropriated in aid is raised and paid." The recognition of respondents' claimed construction of this section of the statute would simply amount to a negation of the constitutional provision above quoted. The object and purpose of the constitutional provision is clearly set forth therein and in the other sections of the article. It was to maintain the credit of the state and the counties by keeping them upon a cash basis. Warned by a fearful experience, the makers of the constitution were desirous of protecting the people from the cupidity and rapacity which past experience admonished them sometimes influenced those who had the management and control of state and county finances, and for the accomplishment of these ends they made what they conceived to be sufficient provisions in the constitution. If it is claimed that this expenditure comes within the proviso of section 3, article 8, of the constitution, we answer that a construction of that proviso, as well as of the entire section, was given by this court in the case of Bannock Co. v. Bunting, 4 Idaho, 156, 37 Pac. 277, and we would suggest that an improvement involving an expenditure of nearly $40,000, where the revenue of the county for the year was only about $70,000, would not readily be classed as an "ordinary and necessary expense." It would be difficult, we apprehend, to name an expense under such a construction that would not be "ordinary and necessary." If a necessity existed for the bridge, there was no conceivable excuse for not complying with the plainly expressed provisions of the constitution and the statutes. If these provisions of law are to be ignored or defeated upon flimsy technicalities, it is difficult to see what protection the people will have. Again, it does not appear that any attempt was ever made by the board of commissioners to avail themselves of the provision of section 11 of the act of March 13, 1891. No

warrants were ever drawn upon the general fund, nor were there to be, under the terms of the contracts. Nor was there any special or other tax levied to meet the payments stipulated for in said contracts. The appeal to section 11 of the act of March 13, 1891, seems to have been entirely an afterthought, due, we apprehend, more to the acumen of counsel than any desire on the part of the commissioners to comply with the law. It is contended by respondents that "the complaint should have contained an allegation that upon the date the warrant was drawn there was not sufficient money in the county treasury to pay the same." Without assenting to this contention, it is sufficient to say that the complaint does contain an unequivocal statement that all of the moneys in the general bridge fund, upon which all of these warrants were drawn, was exhausted. We have examined with scrutinizing care all of the cases cited by respondents, and we are unable to recognize their pertinency to the case at bar.

Stripped of all subterfuge, the plain facts in this case, as they appear from the complaint, are simply these (and for the purposes of this case we are assuming that the facts alleged in the complaint are admitted by the demurrer):

The board of county commissioners of Ada county, without authority of law, and in violation of the plain and unequivocal provisions of the constitution, caused to be issued warrants upon the general bridge fund of said county to the amount of $35,690. Being unauthorized by law, and their issuance prohibited by the provisions of the constitution, the warrants so issued are void. This is not a case where a simple claim is presented for allowance to the board, and from the action of the board in relation thereto an appeal may be taken. The board were acting for the county. They made a contract which was unauthorized by law. The duty of the board was plain. They should have submitted the question to a vote as provided. But, without submitting this question, involving an expenditure of a sum of money equal to more than one-half the revenue of the county for the year, they assumed upon their own motion to abrogate and set aside both the law and the constitution, and only obey the dictates of their own sweet will. And we are called upon as a court to indorse their action. It must have been palpable to the board of com-

missioners that the debt they were incurring against the county in the making of the bridge contracts vastly exceeded the income and revenue provided for that year. What excuse, then, was there for ignoring the provision of the constitution providing for such a contingency? Section 1762 of the Revised Statutes makes provision for the letting of contracts for improvements when the expense involved will exceed $1,000, but this section was also ignored, except in some minor particulars. The section provides that "when a petition signed by at least one-third of the taxpayers who are qualified voters of any county is presented to the board," etc., the board may proceed, under certain regulations; to make such contract. This provision of the statute, it is true, antedates the constitution, and, in so far as it conflicts with the provisions of that instrument, it is unavailable. It is mentioned here because it seems to verify the statement already made that there seems to have been no intention or desire on the part of the board to comply with either the law or the constitution. The principles we recognize in our conclusions in this case are, we think, fully supported by the decisions upon this and cognate questions. (See *Buchanan v. Litchfield,* 102 U. S. 278, affirmed in *Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. Rep. 820; *French v. City of Burlington,* 42 Iowa, 614; *Book v. Earl,* 87 Mo. 246.) But, aside from other authority than our own constitution and statutes, we feel compelled to hold that this action should be sustained. Upon the question suggested in brief of counsel for the respondents as to the liability of the county upon a *quantum meruit* for the cost of the bridge, the county having accepted and appropriated it, we do not feel called upon to pass at this time. The judgment of the district court is reversed, and the cause remanded, with instructions to overrule the demurrer of defendants, with leave to answer; costs to appellant.

Morgan, C. J., and Sullivan, J., concur.

### ON REHEARING.

SULLIVAN, C. J.—A petition for rehearing was granted. The cause was first submitted to this court without oral argument, but on this hearing the case was fully presented by oral

argument and printed briefs. A number of additional authorities were cited. As the facts of the case are fully stated in the former opinion, it is not necessary to repeat them here. The appeal is from the order and judgment of the district court sustaining a demurrer to the complaint.

This is a suit in equity for the cancellation of certain county warrants issued by the plaintiff county to the defendant the Bullen Bridge Company. Respondents contend that this action cannot be maintained, for the reason that the plaintiff has a plain, speedy, and adequate remedy at law, and for this reason the decision of the trial court on the demurrer should be sustained; while the appellant, the county of Ada, contends that the action of the court below in sustaining the demurrer to the complaint should be reversed. The appellant contends that sufficient facts are stated in the complaint to authorize the interposition of a court of equity, and to warrant such court to grant the cancellation of said county warrants; and cites section 921 of Dillon on Municipal Corporations. In that section the author lays down the following rule: "A municipal corporation may, in its own name, bring suit, in proper cases, to be relieved against illegal, unauthorized, or fraudulent acts on the part of its officers." We do not dispute this principle but indorse it. The distinguished author says such suit may be brought in a "proper case." He does not intimate that a bill in equity would lie to cancel a written contract where the party has an adequate remedy at law, where such remedy would be adequate, certain, and complete. If there is no legal remedy, adequate, certain, and complete, a municipal corporation may maintain a bill in equity to cancel warrants illegally issued. The appellant cites. *Andrews v. Pratt*, 44 Cal. 309, as a case directly in point sustaining its contention. The facts in that case were very different from the facts in the case at bar. In that case the plaintiff was a resident taxpayer of Placer county, and three of the defendants composed the board of supervisors of said county, and the fourth one was the treasurer thereof. The board of supervisors were authorized by law to sell certain railroad stock owned by the county, which they did, and for services in negotiating and making said sale they each individually filed a claim against the county for $1,500 for their services therein, which claims were

allowed by said claimants acting as a board, and warrants issued to each of said officers for the sum of $1,500. By the laws of that state the compensation and fees of members of the board of supervisors were fixed. The law also provided that no other fees or compensation than that provided by statute should be allowed to the members of such board. Under the law, the members of said board were not entitled to compensation for the sale of the stock referred to. The warrants sought to be canceled remained in their hands at the time of the commencement of said suit; while in the case at bar the record shows that the warrants referred to in the complaint are not in the hands of the parties to whom they were issued, but have passed into other hands, or at least third parties have acquired interests in them; that the county has received a bridge costing many thousand dollars, and other improvements, for which said warrants were issued. No tender of said bridge and improvements is made by the appellant to respondents. This statement of facts is sufficient to show that the case cited is a very different one from the case at bar; and, further, no offer is made by the county to place defendants *in statu quo.* This was not considered on the former hearing of this case. Equity would not permit the county to retain the bridge and other improvements, and have said warrants canceled. One of the fundamental principles of equity is, "He who asks equity must do equity," even in favor of one who has entered into and executed a voidable contract. (*City of Oakland v. Carpenter,* 21 Cal. 642.) However, the decision on the case at bar is not based upon the ground that the county failed to offer to do equity, but on the ground that plaintiff has an adequate remedy at law. Other cases are cited by the appellant. Those were held to be proper cases for the intervention of a court of equity, while under our statute, in the case at bar, the county has an adequate remedy at law. Conceding that the county treasurer would not be liable in case he should pay said warrants before the final determination of their legality or illegality, in an action at law, no doubt, the court, upon a proper showing, would grant an order restraining the treasurer from paying them until final judgment was obtained in regard to their legality. The county warrants which are sought to be canceled by this action are not negotiable under the law-merchant. The power to

cancel a written instrument is a purely equitable remedy, and is a remedy that will not be granted, or is a power that will not be exercised, unless there is some special ground for it. The warrants, being non-negotiable, cannot pass into the hands of *bona fide* holders, so as to devest the county of any defense it may have against their payment. In section 914 of 2 Pomeroy's Equity Jurisprudence, the principle involved in this case is stated as follows: "The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete." The doctrine there enunciated is not changed or modified by the laws of this state. The rule is the same in states where the code practice exists as in the states where separate courts of chancery are maintained. In the state of New York, where the code practice obtains, it was held in *Insurance Co. v. Reals,* 79 N. Y. 202, as follows: "The case presented furnishes no ground for the interference of a court of equity. Such a court will not interfere to decree the cancellation of a written instrument unless some special circumstance exists establishing the necessity of a resort to equity to prevent an injury which might be irreparable, and which equity alone is able to avert. That a defense exists is insufficient. Nor is it enough that the evidence be lost." In *Allerton v. Belden,* 49 N. Y. 373, the court says: "The right to the relief exists only where, from the form of the security the defense cannot be made available at law, or where the instrument sought to be avoided is a cloud upon the title to land, or some other necessity for the interposition of a court of equity is shown." In *Town of Venice v. Woodruff,* 62 N. Y. 462, 20 Am. Rep. 495, it is said: "A court of equity will not interfere to decree the cancellation of a written instrument unless some special circumstance exists establishing the necessity of a resort to equity to prevent an injury which might be irreparable, and which equity alone is competent to avert." To the same effect are *Town of Grand Chute v. Winegar,* 15 Wall. 373; *Edelman v. Latshaw,* 159 Pa. St. 644, 28 Atl. 475. Where the invalidity of an instrument appears on its face, or where

there is no danger of the instrument passing into the hands of an innocent holder, and where there is an adequate remedy at law, a court of equity will not take jurisdiction, and decree the cancellation of such instrument. (Story's Equity Jurisprudence, sec. 700a; *Delaine Co. v. James,* 94 U. S. 214.) In *Ada Co. v. Gess,* 4 Idaho, 611, 43 Pac. 71 (which was an application for an injunction to restrain the payment of certain county warrants), the court holds that there was a complete and adequate remedy at law, and therefore equity could not be invoked. (See, also, *Morgan v. Board,* 4 Idaho, 418, 39 Pac. 1118; *Rogers v. Hayes,* 3 Idaho, 597, 32 Pac. 259; *Clark v. Dayton,* 6 Neb. 192.) In *Farming Village Corp. v. Sandy River Nat. Bank,* 85 Me. 46, 26 Atl. 965, the doctrine applicable to the case at bar is clearly stated. That was a bill in equity, praying for a perpetual injunction against the defendants enjoining them from negotiating or delivering certain bonds issued by said corporation. It is there held that a court of equity, in a proper case, has full power to order the cancellation of bonds or other written instruments; but that it is a power which the court, in its discretion, will exercise with care, and only in accordance with what the court believes to be proper and right under the circumstances; and that such power will not be exercised where the legal remedy, either affirmative or defensive, would be adequate, certain, and complete. To the same effect is *Delaine Co. v. James,* 94 U. S. 207, and *Town of Glastenbury v. McDonald,* 44 Vt. 450. In this case the county need not wait for the defendants to sue on said warrants, but it can force defendants to do so by virtue of the provisions of section 4928, of the Revised Statutes, which is as follows: "An action may be brought by one person against another for the purpose of determining an adverse claim which the latter makes against the former for money or property upon an alleged obligation." This statute provides a complete and adequate remedy against the delay of defendants in bringing suit upon said warrants, and may be invoked on behalf of the county. In such suit any legal defense which the county has against the payment of said warrants may be interposed. Section 4928, *supra,* is the same as section 1050 of the Code of Civil Procedure of California, and is a transcript of section 527 of the old Practice Act of California. In *Lewis v.*

*Tobias,* 10 Cal. 578, which was a suit in equity to compel the surrender and cancellation of a promissory note, the court held that said section afforded an adequate remedy.  The court says: "If the doctrine contended for by respondent be at all debatable elsewhere, it is more clear here, for we have a statute whereby a party may force his adversary to wage his claims, or else forever abandon them."   Again, the court says: "While, if we recognize the principle invoked by the respondent, we must necessarily admit that in every case in which the payor of note, or bond, or other money security, has a defense to it, though purely legal, we must admit him, at his pleasure, into a court of equity, deny the holder a trial by jury, and permit the payor to take the place of the actor in a proceeding to test his liability.   We see no necessity for such a principle and we think it would produce only confusion, and that it starts with a denial of a positive right of the holder.  If the holder unreasonably delays to sue, the payor may force him to do so under the statute."   The case of *Lewis v. Tobias* is affirmed in *Smith v. Sparrow,* 13 Cal. 596, and in *Shain v. Belvin,* 79 Cal. 262, 21 Pac. 747.   The action provided for by said section 4928 is an action at law, and triable, in the ordinary course of law, and by jury, unless waived.   (*Taylor v. Ford,* 92 Cal. 419, 28 Pac. 441.)   If the county has a legal defense to the payment of said warrants, by permitting it to come into a court of equity the defendants would be deprived of a trial by jury.  The defendants would thus be deprived of a positive right which the law gives them. The former decision in this case is reversed, and the order of the trial court in sustaining the demurrer and the judgment entered therein are sustained.   Costs of this appeal awarded to respondents.

Huston and Quarles, JJ., concur.