# CHARLESTON.

## Boggs' Executor *v.* Harper's Administrator.

Submitted Sept. 8, 1898—Decided Dec. 10, 1898.

1. Death—*Presmuption of Death.*

    A person who absents himself from his home, and is unheard of by those who, had he been alive, would naturally have heard of him, for seven years, will be presumed to be dead, and treated as such in any litigation in which he is concerned, in the absence of proof to the contrary. (p. 559).

2. Vendor and Vendee—*Contracts—Sale of Land—Description—Records—Deficiency.*

    Where a party, by an agreement in writing, contracts to sell a tract of land, describing it by a general local description, and as being the same land conveyed to him by a third party, the vendee has a right to look to the record for a description of the land; and if it there appears that the land is described by metes and bounds, and containing a certain number of acres, such vendor will be regarded as representing the land to contain the number of acres mentioned in said recorded deed. (p. 561).

3. VENDOR AND VENDEE —*Contracts—Fraud—Sale of Land—Equitable Relief—Deficiency.*

Where a party, by written agreement, sells a tract of land at a specified price, upon an unqualified statement that it contains a definite quantity or specified number of acres, it will be held *prima facia* that the vendee was influenced to pay or agree to pay the price specified because of such statement ; and if it is afterwards established that there is a deficiency in the quantity, in excess of what may be rightfully attributed to the usual inaccuracies in surveying, the vendor, in the absence of all other proof, will be presumed to have committed a fraud on the rights of the vendee by such statement of the quantity, and a court of equity will for this reason grant relief to the vendee for such deficiency. (p. 562).

4. VENDOR AND VENDEE—*Contracts—Sale of Land—Deficiency—Compensation.*

The general rule in such cases is that the compensation allowed for the deficiency in quantity shall be at the rate of the average price paid or agreed to be paid for the entire tract purchased. (p. 562).

Appeal from Circuit Court, Pendleton County.

Bill by John Boggs against Elijah Harper. Pending the suit, the parties died. A decree was rendered, from which Isaac P. Boggs, executor of the original complainant, appeals.

*Reversed.*

F. M. REYNOLDS, for appellant.

CHARLES P. JONES, for appellee.

ENGLISH, JUDGE:

By an agreement in writing, dated November 28, 1860, Elijah Harper contracted to sell to John Boggs certain tracts of land, namely, all the lands deeded to him by Philip Harper, Sr., deceased, lying on both sides of the North Fork, in Pendleton County, W. Va., for the sum of two thousand and eighteen dollars; and said Elijah Harper, on his part, bound himself, his heirs, etc., to make or cause to be made a good, lawful warranty deed, and free it of all incumbrance, giving peaceable possession of all the land, except the field seeded in grain on March 1, 1861, and possession of the dwelling house the 1st of April, 1861, all in the same order it then was, and possession of the seeded

field when the crop was off; said deed to be made, and the above obligations complied with, on or before April 1, 1861. John Boggs paid in cash five hundred dollars, and after deducting the amount of vendor's lien on the land, which Boggs subsequently paid, a balance of five hundred and eighteen dollars was left, for which Boggs executed his single bill, dated November 28, 1860, payable October 1, 1861. In December, 1869. Elijah Harper instituted an action at law on said single bill. This suit was continued until October, 1876, when Boggs withdrew his defence to said action at law, reserving to himself all rights in equity; and a judgment was rendered against Boggs on said single bill for nine hundred and eighty-four dollars and forty-six cents, with interest from October, 1876. On December 25, 1876, said Boggs obtained an injunction to said judgment, on the ground that there was fraud and misrepresentation as to the quantity of land sold by Harper, and on the ground that there was a large deficiency in one tract of land described in one of the deeds from Philip Harper to Elijah Harper. The plaintiff, Boggs, in his bill, praying for an injunction, stated these facts, and also that some time in 1876 said Harper sued out an execution against him on said judgment, which was then in the hands of the sheriff; Also alleging that, at the time he purchased said lands, Elijah Harper represented to him that they consisted of four tracts,—one tract of one hundred and four, one of ten, one of forty, and the remaining tract twenty-eight acres,—which representations were false, but that they were relied on by him, and that it was by reason of these misrepresentations he was induced to purchase as aforesaid, especially the representation as to the one hundred and four acre tract; that this tract, instead of one hundred and four acres, contained only fifty-two acres; that said Harper did not have any title or right to more than fifty-two acres in the one hundred and four acre tract, nor did Philip Harper, Sr., have any title thereto; that on May 15, 1848, Reuben Harman and Joseph Lantz, executors, or Thomas Miller, deceased, conveyed to Jonas Miller and George Miller a tract of land of fifty-two acres on the North Fork, in Pendleton County, lying wholly within, and forming a portion of said one hundred and four acres; that

by a survey made by the county surveyor, it fully appeared that Harper or said Philip Harper, Sr., had no title to any portion of said one hundred and four acres, except that part not covered by said deed to Jonas and George Miller, above mentioned; and that the portion of said one hundred and four acre tract embraced in the Miller deed is of great value, to-wit, one thousand four hundred dollars, and if he had known that Elijah Harper had no title to, and could not have conveyed to him, that valuable portion of the one hundred and four acres, he would never have made the purchase; that, by reason of the defendant Harper's failure to convey him this valuable portion of said tract he has suffered damage to a greater amount than the judgment above mentioned; that he has never given plaintiff possession of said land, or at least, the most valuable portion thereof, and has never made him a deed for any part of said land.

Plaintiff further alleged that, at the time of said sale, said Philip Harper, Sr., had a vendor's lien on said land, to secure the payment of the purchase money still due on his sale to Elijah Harper; that in 1868 the executor of Philip Harper, Sr., brought a suit in equity to enforce said lien, and, under a decree in said suit, H. H. Masters, as special commissioner, sold said lands, at which sale the plaintiff became the purchaser, at the price of one thousand three hundred and sixty-nine dollars, and paid the money; that it was understood between plaintiff and the defendant and Harper at the time of said sale, that the vendor's lien aforesaid should be discharged by complainant, and that he should have credit for the amount thereof on said two thousand and eighteen dollars, but that, failing to get any deed for said land from Harper, he suffered a sale of said land under a decree of court, in order that he might receive some title thereto; that Harper left Pendleton County soon after the war, and has not yet returned, and it is not known where he resides; that, if compelled to satisfy said judgment, it would be impossible for him to be reimbursed for the loss sustained by Harper's failure o comply with his contract; that he only desired a good legal deed for all the land the defendant Harper sold and agreed to convey to him; and that, until such deed is made and

delivered, he should not be compelled to pay the balance of
purchase money represented by the judgment aforesaid ;
and he prayed that the sheriff of said county and Elijah
Harper might be restrained by injunction from the collec-
tion, by execution or other process, of said judgment, and
for general relief.   An injunction was awarded as prayed
for, and perfected.   The bill was answered by D. G. Mc-
Clung, administrator of Elijah Harper, deceased, denying
that, at the time plaintiff purchased said land of Harper,
he represented to said Boggs that it consisted of four
tracts, containing, respectively, one hundred and four, ten,
forty and twenty-eight acres; but, on the contrary, he al-
leged that on November 28, 1860, said Elijah Harper had all
of his land put up for sale in gross at public auction, and
employed Boggs to make the sale, and he cried it off to one
Jonas Miller, who owned the adjoining land, at the price of
two thousand and eighteen dollars for the whole, in gross,
and not by the acre; that, after said Miller bought said land
at said sale, he agreed that Boggs might take the land at the
same price at which it had been knocked to him, and then
said agreement was executed between Elijah Harper and
plaintiff ; that the fifty-one and three-fourth acres claim-
ed by plaintiff was part of said one hundred and four
acre tract, was highly improved, and had been in the
possession of Jonas Miller and his heirs for seventy-
five or one hundred years, and had on it a dwelling
house only about forty yards from the line; that the
sale of said land by said Harper to Boggs was in gross
and not by the acre; that Boggs got all the land he thought
he was buying, and that his knowledge thereof was
nearly, if not quite, equal to that of Harper; that the land,
exclusive of said fifty-one and three-fourth acres, was in
1850 worth more than Boggs agreed to pay for it ; that it
was then worth two thousand five hundred dollars or three
thousand dollars, and he prayed that the injunction be dis-
solved.   Depositions were taken, and among them that of
John Boggs, the plaintiff, which was excepted to; and on
November 12, 1894, the court sustained exceptions to
the testimony of said Boggs in so far as related to trans-
actions formerly had with said Harper, and leave was given
plantiff to take other depositions.   On the 20th of April,

1897, the cause was finally heard, the injunction dissolved, and it was decreed that said McClung, administrator of Elijah Harper, deceased, recover against Isaac P. Boggs, executor of John Boggs, deceased, three thousand one hundred and seventy-two dollars and sixty-four cents, with interest from April 20, 1897, till paid, but directed that before any execution on said judgment should be issued, the widow of Elijah Harper, with her husband and Philip C. Harper, Job D. Harper, and John D. Harper, heirs of Elijah Harper, deceased, should file in the papers of the cause a sufficient deed, with general warranty, conveying said land to the heirs of John Boggs, deceased, which deed should be delivered when the amount therein decreed should have been paid. Isaac P. Boggs, executor, etc., thereupon obtained this appeal.

The second error claimed and relied on by appellant is as to the action of the court in sustaining the exception to the deposition of John Boggs, so far as it related to transactions with Elijah Harper, because there was no sufficient evidence that he was dead when said John Boggs was examined and his evidence taken. The deposition was taken on the 11th of August, 1877. At that time the whereabouts of said Harper had not been known for twelve years. His wife had married again. An administrator had been appointed of his estate, who filed his answer as such to plaintiff's bill, to which the plaintiff replied generally; and on November 12, 1894, the court sustained the exceptions to the deposition of said John Boggs so far as related to transactions held formerly with said Eljah Harper. In determining questions of this character where positive proof is lacking, the court is compelled to rely on presumption. At the time the deposition was taken, more than twelve years had elapsed, and, when the exception was sustained, nearly twenty years had passed, since Harper had been definitely heard from; and the court was well warranted in presuming him dead when the deposition was taken. In *Davis* v. *Briggs*, 97 U. S. 628, the Supreme Court held "that a person who for seven years has not been heard of by those who, had he been alive, would naturally have heard of him, is presumed to be dead; but the law raises no presumption as to the precise time of his death."

The same thing was held in *Evans* v. *Stewart*, 81 Va. 724. We also find that sections 44, 45, chapter 130, Code, provide that "if any person who shall have resided in this State go from, and do not return to, the State, for seven years successively, he shall be presumed to be dead in any case where his death shall come in question, unless proof be made that he was alive within that time." So, also, in *Hoy* v. *Newbold*, 45 N. J. Law, 219, it was held: "A person who absents himself from this state for seven successive years is presumed to be dead, and the party asserting he is living must prove it." See also, 1 Am. & Eng. Enc. Law, 37, and note. This case was continued from time to time, and frequent opportunities were allowed the plaintiff to overthrow the presumption that Eljah Harper was dead, but the proof was not forthcoming; and I conclude that the circuit court acted properly in excluding the testimony of Boggs as to transactions and communications had with said Harper.

Was this a sale in gross, or a sale by the acre? It appears from the evidence that the plaintiff was well acquainted with the land; that he sold it as agent of said Harper, at auction, to Jonas Miller, for two thousand and eighteen dollars, who agreed that said Boggs might take it off his hands at the same price and then the agreement in writing was entered into with Harper. At the time Boggs offered said land for sale at auction, he offered the four tracts together, and sold them in that way to Miller; and, when Miller consented to allow Boggs to take the lands at the same price, he contracted for the land with said Harper in the same way. Now, when the testimony of Boggs was excluded as to transactions and communications had with said Harper, there remained no evidence as to any representations made by him as to the quantity of land in either of said tracts; but, when we look to the title bond itself, we find that the land is therein described as "certain parcels of land, namely, all the lands deeded or conveyed to him, Elijah Harper, by Philip Harper, Sr., deceased, lying on both sides of the North Fork, in the county and state aforesaid, for the sum of $2,018;" and said Harper bound himself and his heirs, etc., to make or cause to be made a good, lawful warranty deed, and free it of all incumbrance.

It appears from exhibits filed with the bill that on the 19th of January, 1860, Phillip Harper conveyed to said Elijah Harper a tract of land by metes and bounds, containing one hundred and four acres, less ten acres, which was admitted to record on the 10th of April, 1860, which deed fixes the number of acres in said so-called "104-acre tract" at ninety-four acres, which land was conveyed to Elijah Harper, with covenants of general warranty; and said Harper, in said title bond, by his warranty therein contained, must be considered as warranting the land described in said deed from Philip Harper to him, and thereby representing it to contain ninety-four acres; and, while said Boggs had an opportunity of informing himself as to the number of acres by reference to the deeds, yet it appears that as early as the 15th of May, 1848, Jonas Miller and George Miller acquired title to the fifty-two acres included within the boundaries of said ninety-four acre tract, which fact did not appear in any way on the face of the deeds from Philip Harper. So, Elijah Harper, by referring to the source of his title, represented the number of acres in the tracts of land sold. · In the case of *Crislip* v. *Cain*, 19 W. Va. 441 (fifteenth point of syllabus), the Court held that "as the vendee of land has a right to rely on the statement of the vendor as to the number of acres in a tract of land which he sells, and naturally, does rely upon it, and as the quantity of land is generally a material matter in the purchase of a tract of land, it ought *prima facia* to be regarded that the vendee was induced to pay or agree to pay the price named in the contract or deed, because the statement in it by the vendor of the number of acres, which statement, if positive, should be regarded as a statement made on the personal knowledge of the vendor, and therefore, in the absence of all other proof, the vendor must be regarded as guilty of fraud on the vendee; and a court of equity should, for this reason, require the vendor to make a proportionate abatement from the purchase money." And, in point twenty of syllabus in the same case, the Court holds that "a court of equity has clearly jurisdiction to abate from the purchase money due from a vendee for the deficiency in such a sale of land by which the vendee was injured, through the fraud of the vendor in mis-

stating the quantity of the land in the face of the contract or deed or orally." Also, in the case of *Heavner* v. *Morgan*, 41 W Va. 428, (23 S. E. 874), this Court held that "where a party, by his title bond, covenants to sell a tract of land with general warranty, describing it as containing a certain number of acres, and the vendee executed to him his bond for the purchase money, and it is subsequently ascertained that there is a material deficiency in the quantity of the land, and it further appears that the vendor is insolvent, a court of equity will not require such vendee to complete his purchase by paying his bonds, and to rely upon the hazard of recovering the money so paid from his insolvent vendor." Again in the case of *Kelly* v. *Riley*, 22 W. Va. 247, in the third point of syllabus, it was held that "where a person has made a sale of land in gross, at a specified price, upon an unqualified statement that it contained a definite quantity or specified number of acres, it will be held *prima facia* that the vendee was influenced to pay or agree to pay the price specified because of such statement ; and, if it is afterwards established that there is a deficiency in the quantity in excess of what may be rightfully attributed to the usual inaccuracies in surveying, the vendor, in the absence of all other proof, will be presumed to have committed a fraud on the rights of the vendee by such statement of the quantity, and a court of equity will, for this reason, grant relief to the vendee for such deficiency." And in point four it was held: "The general rule in such cases is that the compensation allowed for the deficiency in quantity shall be at the rate of the average price paid or agreed to be paid for the entire tract purchased." To the same effect, see *Sine* v. *Fox*, 33 W. Va. 521, (11 S. E. 218).

The evidence in this case clearly shows that there was a deficiency in said ninety-four acre tract of fifty-two acres, which portion was held by an older and better title; and, applying the principles announced in the decisions above quoted to the facts of this case, I must hold that the circuit court erred in dissolving the injunction awarded in this cause, and that the estate of John Boggs, deceased, is entitled to an abatement in the purchase money, to be ascertained by multiplying said fifty-two acres of deficiency in

said land by the average price per acre of said ninety-four acre tract. The decree complained of is therefore reversed, and the cause remanded.

*Reversed.*