# CHARLESTON

## BRUNER & McCOACH *v.* MILLER.

Submitted January 23, 1906.   Decided February 13, 1906.

1. COURTS OF EQUITY—*Rescission of Contracts—Mistake—Fraud.*
   Rescission of contracts, affecting any estate or interest in land, on the ground of fraud in the procurement thereof, or mutual mistake of the parties in effecting the same, belongs to the exclusive jurisdiction of courts of equity.   (p. 44.)

2. RESCISSION OF CONTRACTS—*Remedy at Law.*
   Courts of law have jurisdiction and power to afford relief, in such cases by judgment for money or property, under some circumstances, when a right to rescind exists and has been properly claimed; but the remedy at law is incomplete and inadequate, because of lack of power to effect a rescission by a direct adjudication thereof.   (p. 44.)

3. OIL AND GAS—*Oil Lease—Sale—Rescission.*
   Owing to the peculiar nature of oil and gas, both the quantity and location of land covered by a lease thereof for oil and gas purposes, are elements going to the substance and essence of a contract of sale of such lease, obligating the vendee to develop the property by drilling a well thereon and deliver to the vendor part of the product thereof, free of cost or expense; and a gross misrepresentation, as to either, relied upon by the vendee, under the belief that it is true, is ground for rescission of the contract.   (p. 39.)

4. RESCISSION OF CONTRACT—*Decree.*
   On rescinding a contract, the court should, by its decree, put the parties in *statu quo*, by requiring each to restore to the other what he obtained by virtue of the contract.   (p. 41.)

5. RESCISSION of CONTRACT—*Recovery of Consideration.*
   Money paid, as rental to the land owner, for delay in drilling a well under a lease, held by assignment, in accordance with the terms of the lease, may be recovered back on rescission, when the contract of sale does not bind the vendee to drill, but extends to him the right to pay such rental in lieu of drilling.   (p. 41.)

   (BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Tyler County.

Bill by A. Bruner and others against R. W. Miller. Decree for plaintiffs, and defendant appeals.

*Affirmed.*

THOS. P. JACOBS, for appellant.

HALL & HALL, for appellees.

POFFENBARGER, JUDGE:

R. W. Miller has appealed from a decree of the circuit court of Tyler county, canceling a contract executed between him, as party of the first part, and A. Bruner and James McCoach, as parties of the second part, whereby Miller assigned and made over to said Bruner and McCoach a lease of certain lands of Nelson Myers for oil and gas purposes, Bruner and McCoach binding themselves, in the contract of assignment, to develop the property in accordance with the terms of the lease. The considerations paid by them to Miller were six hundred dollars in cash and an agreement that he should have a one-fourth interest in the first oil well drilled on the property, free of any cost or expense to him. The bill sought rescission of the contract and repayment of said sum of six hundred dollars, together with an additional $215.00, paid by Bruner and McCoach as rental for delay in drilling, on the ground of fraudulent representations on the part of Miller, as to the location and quantity of the property on which the lease was. It does not appear that any of the parties were very familiar with the land. Miller resided in the city of Wheeling and Bruner and McCoach in the city of Sistersville, Tyler county, while the land was situated in Wetzel county. For a number of years, James Lane of Wheeling had held part of the Myers land under lease, and he having died, Miller became executor of his will. As such executor, he and the devisees or heirs of Lane allowed it to lapse, believing it not to be of any value. In view of development in the neighborhood of the land, Miller obtained a lease of it himself, with a view to disposing of it to one Jennings. He first went to Myers and obtained a sort of option for which he paid six hundred dollars. Bruner and McCoach having been informed of this, made to him the proposition, with reference to the lease, afterwards embodied in the contract or deed in question here.

The lease from Myers to Miller is indefinite and uncertain as to the description and quantity of the land, no quantity being stated, except in that part which relates to the boundaries, reading as follows: "On the North by the lands of W. M. Wyatt; On the East by the lands of James Ice; On the South by the lands of John Mills; On the West by the lands of N. Myers, containing 215 Two hundred and fifteen acres

more or less.'' In discussing the merits of the property, in the negotiations for the assignment of the lease, the parties had before them certain plats of the lands mentioned in the lease and adjoining lands, and, on reading the lease in connection with these plats, the description and the plats did not correspond in respect to the names of the owners of adjacent lands. The plat was prepared upon information afforded by the lease and knowledge of the parties, and especially information communicated by Miller. This plat showed a tract of 215 acres designated as Nelson Myers No. 1. Then the deed of assignment was prepared describing the land as follows: ''Containing 215 acres more or less and bounded and described as follows: On the North by the lands of William M. Wyatt, On the East by the lands of James Ice, On the South by the lands of John Mills, On the West by the lands of N. Myers and others; a plat of which said leasehold and surrounding territory is hereto attached marked in red ink 'R.W.M' and the leasehold above described or intended so to be, and the leasehold that is sold by this indenture is marked on said plat in red ink 'Nelson Myers No. 1.'" The plat was annexed to the deed of assignment. These deeds bore date, respectively, on the 13th and 14th days of February, 1900. The lease required the commencement of drilling within forty days from its execution, or in lieu thereof, payment thereafter to Myers of the sum of $215.00. It further required the completion of a well on the premises within six months from the date of the contract, or payment of a rental of one dollar per acre. These obligations Bruner and McCoach assumed in the deed of assignment. In view of the bad condition of the weather and roads, they failed to commence drilling within forty days, and paid said sum of $215.00. On examining the property, sometime in April, 1900, they found that all of the property described in the plat annexed to the deed except twenty-five or thirty acres was covered by a lease held by the South Penn Oil Company, under which said company was then operating. The clause in the lease, saying the land was bounded ''On the West by the lands of N. Myers and others containing 215 Two hundred and fifteen acres more or less,'' plainly appears now not to have been a statement of the quantity of the land in the lease given to Miller, but the quantity of land belonging to Myers included in the

South Penn Oil Company's lease, adjoining and bounding the Miller lease on the west. Upon a proper construction of that lease, in view of the facts then existing, some of which were not known to the parties, the lease from Myers to Miller stated no quantity. It described the lands by boundary only. Under a misapprehension in this respect, the deed of assignment was made to call for a specific quantity, 215 acres, and to cover land not included in the lease. Under it Miller no doubt held a considerable quantity of land, possibly as much as 215 acres, and his right in it passed by the deed of assignment, but it was not the same land, a leasehold in which his deed of assignment purported to pass, nor is it located where said deed of assignment represents it to be.

In a contract of this kind, both quantity and location are material. It imposed upon Bruner and McCoach the duty of drilling a well for oil at an expense of eight or ten thousand dollars, partly for the benefit of Miller. Such a well is valuable not only for its actual product, but as a revelation or disclosure of the mineral value of the territory on which the well is. If the territory be of no greater extent than to justify the drilling of a single well, the obligation to pay over one-fourth of its product would be equivalent to one-fourth of the value of the territory; but if the territory is sufficient to require, or justify, the drilling of ten wells, one-fourth of the product of the first one would be of slight relative value. The testimony shows that some tests had been made in the community in which the land lies, some of which had disclosed the presence of oil while others had not. These tests indicated the value, for oil purposes, of the land lying near the wells. A lease on property, near a producing well, is valuable, while one on property lying in close proximity to a "dry hole" is considered worthless. Hence, in contracts of this kind, the location is peculiarly material.

A misrepresentation concerning the subject matter of a contract, and especially a contract relating to land, though innocently made, as a result of lack of knowledge, amounts in law to fraud, not actual, but constructive, legal fraud, and gives as complete a right of rescission as if it were actual fraud, subject, however, to the limitation or qualification that the representation must relate to some matter or thing which is of the very essence or substance of the contract. *Crislip*

*v. Cain*, 19 W. Va. 438; *Newman v. Kay*, 57 W. Va. 98, (49 S.E. 926). Ordinarily, a deficiency or an excess in the quantity of land sold or leased is not deemed to be a matter of substance. *Newman v. Kay*, cited; *Tucker v. Cocke*, 2 Rand. 51. But a misrepresentation and mutual mistake or a fraud on the one side, accompanied by ignorance on the other, resulting in a sale of property having a different location from that which the purchaser supposed it to have, will always afford ground of relief in equity. The identity of the property or thing sold is always a matter of substance. If, as to it, there is a mistake or one of the parties has been mislead by the fraud of the other, the purchaser is not deemed to have gotten the thing he bought. *Fearon Lumber Co. v. Wilson*, 51 W. Va. 30; *Chamberlaine v. Marsh*, 6 Munf. 284; *Graham v. Hendren*, 5 Munf. 185; *Glassell v. Thomas*, 3 Leigh 113. Under these principles, if Miller be absolved from the charge of fraud and the case regarded as one of mutual mistake, the right to relief is equally as clear as if there had been a fraudulent representation. The bill sets out the facts, showing the erroneous belief of the plaintiffs as to the location of the land, and prays a cancellation thereof. It shows that the purchasers did not get what they supposed they were buying. Hence, according to its allegations, there was either a mutual mistake or a fraud on the part of the defendant, actual or constructive, and the allegations of the bill are fully sustained by the evidence.

The evidence shows that, immediately upon a discovery of the misrepresentation or mistake and failure of title, the appellees made a demand upon Miller to take back the lease and refund the money paid by them to him as purchase money for the lease and to Myers as rental. Miller was willing to repay the six hundred dollars and relieve them from their contract, but unwilling to pay said sum of $215.00. It is not pretended that he would have been materially injured or prejudiced, aside from the loss of the benefit of his contract, had he accepted a re-assignment of the lease and paid back the money. The lease was still alive and no considerable period of time had elapsed. The offer to rescind was made not later than May 3, 1900, and this suit was commenced on the 18th day of July, 1900. The refusal to pay the rental was based upon the theory that its payment to Myers was occasioned by

the fault of the appellees themselves, they having agreed to comply with the terms of the lease, one of which was to pay said rental if the drilling of the well should not be commenced within forty days from the date of the lease. But there was no covenant requiring them to commence the well within forty days and thus avoid the payment of rental. They were allowed in the deed of assignment the full option in respect to this matter, accorded by the lease. They agreed to drill the well, but the covenant contained the following provision: "Such drilling to be done at such time or times as is most convenient to said parties of the second part, but any and all rentals accruing upon said leasehold under and by virtue of the terms of said lease shall be paid for and borne by said parties of the second part in proportion as above stated." Money paid as rental in consequence of delay in drilling was money paid out and expended under the contract and in reference to the property. It was contemplated and provided for by the deed of assignment. It was paid before the appellees had knowledge of the fraud or mistake, and was, therefore, an expenditure resulting directly from a misrepresentation of the appellant. The payment inured to the benefit of Miller, for had they not paid it, he would have been bound to do so. Had they spent one thousand dollars in drilling instead of paying the rent, before discovery of the fraud, would they not have been entitled to be placed in *statu quo*? Rescission goes to the whole transaction and places the parties in their former positions, when that can be done. We think it clear that the appellees were entitled to have refunded to them upon rescission all they had paid out under the contract. Whatever loss the appellant may have sustained, therefore, by reason of the failure to develop the property was occasioned by his own refusal to rescind the contract, upon the demand of the appellees and their offer to restore the lease to him. He might then have protected himself fully by developing the property or selling the lease to some other person. A subsequent sale of it would no doubt have been less advantageous to him than the one he had made to the appellees, but that was a misfortune of his own, for which they were in no way to blame. It was his lease. He had acquired it, and, from the consequences of his own negligence or oversight in procuring it, he could not relieve against him-

self by laying them upon the shoulders of other persons. Having refused to rescind when the appellees demanded it of him, in the exercise of their clear right to do so, it does not lie in his mouth now to say they have injured him either by refusing to develop the property or preventing him from doing so. They held on to the lease because he refused to take it back and pay them the money to which they were entitled. He contested their right to rescind at his peril and they were under no obligation to prevent or minimize damages resulting from his act, and which it was his own duty, and in his power, to prevent. Appellees were not in possession of the leasehold. They had expressly notified him of their intention not to drill or otherwise develop it. He could have entered upon and developed it, and, at the same time, prosecuted an action for the vindication of any rights he had under the contract.

Want of jurisdiction in equity is, however, the proposition mainly relied upon as ground for reversal, and the argument made to sustain it is, that an action at law for recovery of the money paid is an adequate remedy. In this connection many authorities are cited, including *Gall* v. *Bank*, 50 W. Va. 597, and *Ellis* v. *Amick*, 53 W. Va. 421. The concrete cases disposed of by these two decisions are not in any respect similar to the one presented in this record. The former was a suit in equity to enjoin an action at law for the recovery of money on a common law bond, and to cancel the bond, on the ground that it had been satisfied, in a compromise, by payment of a smaller sum than was called for by it. Assuming that there is concurrent jurisdiction in courts of law and courts of equity for the relief of the obligor under such circumstances, the decision is right and in perfect accord with the authorities everywhere, because when there is concurrent jurisdiction, and the law court has acquired jurisdiction of the matter, equity will not ordinarily interfere, although it would have readily taken cognizance had its aid been first invoked. That is the ground of the decision of that case. The syllabus says where an action is pending on the law side of the circuit court, equity will not take jurisdiction. 24 Am. & Eng. Ency. Law 617; *Ins. Co.* v. *Bailey*, 13 Wall. 616; *Grand Chute* v. *Winegar*, 15 Wall. 373. The concurrent jurisdiction of equity is very broad. In many instances it gives exactly the same relief that may be had in a court of law, a mere decree for

money corresponding to a judgment at law for money; but there is some equitable ground in addition to the right to recover money. Pom. Eq. Jur. §§ 171 to 189, inclusive. In most instances of this kind of jurisdiction, the right to go into equity is lost by allowing the law court to assume jurisdiction first. *Id.* § 179. The case, therefore, is no authority for the proposition that equity will never take jurisdiction where there is a remedy at law. It does not deny the doctrine of concurrent jurisdiction. The legal remedy was entirely adequate for a judgment in favor of the defendant would have been absolutely conclusive. It could have been pleaded as an adjudication against any right to recover on the bond in any subsequent action. In the other case, *Ellis* v. *Amick*, the object was specific performance of an alleged contract, if that could be had, and, if not, then a rescission of the contract and recovery of money paid under it. What was relied upon as the contract was not a contract. It was an absolutely void paper, presenting no contract either to be enforced or rescinded. There was no element of contract in it. Of course there was no jurisdiction to undo a thing that had never been done. The only right the plaintiff had, if any, was a right of recovery of money from the defendant, a right purely legal and absolutely devoid of any semblance of equitable right. The inapplicability of the other authorities cited is equally clear. Most of them were cases in which mere cancellation of void or voidable obligations was sought. Cancellation is not always the equivalent of rescission. An obligation for the payment of money differs from a contract or covenant to do some collateral thing. A note or bond simply binds one of the parties to pay money to the other. If it is voidable or void for any reason, the mode of getting rid of it is mere cancellation. There is no condition precedent to be performed. A fraudulent or void deed, passing no title may be cancelled and thereby destroyed. Nothing is to be done by the party attacking it as a condition precedent to the relief asked. If a suit at law has been brought on a note or bond that is voidable, because fraudulently procured, there is no reason why equity should intervene. The result of that action will settle forever the question of liability. It is already in suit, wherefore there is no probability that it will be negotiated or used in any other way to harass or annoy.

Equity, by canceling it, could do no more than put an end to the question of liability on it. That, a court of law does by its judgment. In cases of deeds and other muniments of title, affecting the status of property, cancellation is the only adequate remedy, for no court of law can adjudge and order that deed be cancelled or set aside. It can only give a judgment for money or for property. In these cases, nothing is needed but cancellation.

This case belongs to neither of the two classes above mentioned. The contract involved is not an obligation to pay money and the appellees did not merely ask, by their bill, to be relieved from a voidable paper obliging them to pay money. They seek a recovery of money, against the very letter of the contract, and they ask that the contract be rescinded in order that they may have back the money which they have paid under it. They might have a recovery of that money in an action at law on allegations of fraud and deceit, but that would be only an action for damages for a wrong. They might also recover it as money had and received by the appellant to their use; but that would not obtain an adjudication of the rescission of the contract. A rescission can no more be adjudged in a court of law than a cancellation. Such adjudications are wholly foreign to the law courts and are peculiarly and exclusively equitable in their nature. Rescission may be enforced in a court of law, or rather there may be a recovery of money or property in a court of law as the result of a rescission made by the parties. 24 Am. & Eng. Ency. Law 643. In such case the plaintiff, before suit, tenders back to the defendant the money or property which he has received under the contract and then sues for what he has parted with, and his recovery is one of money or property as the case may be. The rescission is not by the adjudication of the court, but by the act of the party himself. He is not bound, however, to pursue this course, and it is not often done in the case of written contracts. He is entitled to an adjudication, a judicial determination, of the fact of rescission. That he can get only in a court of equity.

"A court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be cancelled, and renders a decree conferring in terms that exact relief. A court of law entertains an action for the recovery of the pos-

session of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages, and although nothing is said concerning it, either in the pleadings or in the judgment, a contract or a conveyance, as the case may be, is virtually rescinded; the recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here the remedy of cancellation is not expressly asked for, nor granted by the court of law, but all its effects are indirectly obtained in the legal action. It is true, the equitable remedy is much broader in its scope, and more complete in its relief; for its effects are not confined to the particular action, but by removing the obnoxious instrument they extend to all future claims and actions based upon it." Pom. Eq. Jur. § 110. Such cases belong to the exclusive jurisdiction of equity. *Id.* §§ 171–188; 24 Am. & Eng. Ency. Law, pp. 613 to 618, inclusive.

From the peculiar nature of the jurisdiction for the purpose of rescission, this Court has always recognized the right of a party who is the victim of a fraud or mistake to come into equity for relief, notwithstanding the existence of concurrent jurisdiction in the law courts. See *Kelly* v. *Riley*, 22 W. Va. 247; *Atkinson* v. *Beckett*, 34 W. Va. 584; *Pritchard* v. *Evans*, 31 W. Va. 137; *Nichols* v. *Cooper*, 2 W. Va. 347; *Anderson* v. *Snyder*, 21 W. Va. 632; *Crislip* v. *Cain*, 19 W. Va. 438; *Boggs* v. *Harper*, 45 W. Va. 554; *Newberger* v. *Wells*, 51 W. Va. 624; *Newman* v. *Kay*, 57 W. Va. 98, (49 S.E. 926). Jurisdiction in equity was asserted in *Fearon Lumber Co.* v. *Wilson*, 51 W. Va. 30, a case almost the exact parallel of this case. A purchaser of real estate was permitted, by way of rescission, to recover back in equity the purchase money paid for the land. The principles upon which the foregoing decisions of this Court rest are almost universally recognized by the authorities. *Taymon* v. *Mitchell*, 1 Johns. (Md.) 496; *Higgins* v. *Crouse*, 63 Hun. (N. Y.) 134; *Bruner* v. *Meigs*, 64 N. Y. 506; *Crump* v. *Ingersoll*, 44 Minn. 84; *Crump* v. *Ingersoll*, 47 Minn. 179; *Bosley* v. *National Machine Co.*, 123 N. Y. 550; *Cocke* v. *Hardin*, 5 Litt. (16 Ky.) 374; *Mayne* v. *Friswold*, 3 Sandf. (N. Y.) 463; *Relf* v. *Eberly*, 23 Ia. 467; *Hosleton* v. *Dickinson*, 51 Ia. 244; *Davis* v. *Peabody*, 170 Mass. 397; *Caldwell* v. *Caldwell*, 1 Marsh. (Ky.) 53.

The decree of the circuit court, however, has departed from the case made by the bill and the evidence, in cancelling the deed of assignment. By that deed, the appellant passed, to the appellees, title to the lease. As a condition of receiving back their money they should have conveyed the lease back to him. As hereinbefore shown, the case is not one of mere cancellation. There was something to be done on both sides. The lease was to be restored to Miller and the money to Bruner and McCoach. The decree requires Miller to pay back the money without requiring Bruner and McCoach to restore the lease. It may be of no value, by reason of its having expired, but neither its validity nor its status appears from this record. This Court cannot say whether it is still alive, nor was the court below in a position to do that. But as no objection to the decree is made on this ground, and this Court cannot see that the appellant has been prejudiced in this respect, it cannot be reversed on a mere presumption of error. The presumption is the other way.

For the foregoing reasons, the decree appealed from will be affirmed, with costs and damages to appellees according to law.

*Affirmed.*