CHRISTIAN HACKER *et al.*

*v.*

B. MUNROE & SON.

*Opinion filed October 24, 1898—Rehearing denied December 9, 1898.*

1. REPLEVIN—*right of vendor to rescind sale and replevy the property.* A vendor induced to sell goods through fraudulent representations by the purchaser, who knows that he is insolvent and who intends not to pay for them, may, before they have passed into the hands of a *bona fide* purchaser, rescind the sale and bring replevin.

2. SAME—*whether purchase was fraudulent or property is in bona fide hands are questions of fact.* In replevin by a vendor to recover certain boilers and fittings shipped to an insolvent buyer, whether the latter intended not to pay for them, whether they had passed into the hands of *bona fide* purchasers, and whether they had been attached to realty so as to become immovable fixtures, are questions of fact settled in the Appellate Court.

3. FIXTURES—*law as to fixtures controls, in the absence of intention appearing from deed.* In the absence of any specific intention appearing from the deed, property originally personal in character will pass with the land or not, as between grantor and grantee, according to whether it has or has not become, in law, a fixture.

4. SAME—*tests to be applied in determining the character of property.* The tests to be applied in determining the character of boilers and fittings contained in buildings upon land conveyed by deed are, whether they were actually annexed to the realty or appurtenant thereto, their application to the use to which that part of the realty where they were situated was appropriated, and the intention of the parties who placed them in position as to their becoming permanent accessions to the freehold.

5. INSTRUCTIONS—*instructions are considered together as one charge.* The omission of an element of recovery from an instruction is not reversible error if the missing element appears so frequently in the other instructions that the jury could not have been misled.

6. SAME—*one cannot complain of opponent's instructions similar to his own.* One cannot complain of error in his opponent's instructions where his own contain the same defect.

*Hacker v. B. Munroe & Son,* 61 Ill. App. 420, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is a suit in replevin, begun on December 21, 1892, by the appellees against the appellants to recover the possession of three boilers, and the smoke-stacks, plates, valves and attachments belonging thereto. The valves and attachments were not found. There was a count in trover in the declaration to recover the value of the articles not found. The pleas were *non cepit, non detinet,* property in defendants, and that the boilers, etc., were fixtures, belonging to real estate and buildings owned by defendants, and designed for a tin plate mill and plant and, therefore, not the subject of replevin. To the plea of property in defendants the plaintiffs replied, that the property replevied was the property of plaintiffs, and not of defendants; and they also replied that the property replevied was not fixtures. Plea of not guilty was filed to the count in trover.

Two trials were had. Upon the first trial verdict and judgment were in favor of the plaintiffs. Upon appeal to the Appellate Court the judgment was reversed, and the cause was remanded, as will be seen by reference to the case of *Hacker* v. *Munroe & Son,* 56 Ill. App. 532.

Upon the remandment of the cause to the circuit court it was re-docketed for trial, and tried a second time. Upon the second trial the jury found the issues in favor of the plaintiffs, the present appellees, on the counts in replevin, and assessed their damages at one cent; and they also found the defendants guilty of withholding the goods named in the trover count, and assessed the damages at $180.00. Motion for new trial was overruled, and judgment was rendered upon the verdict and for costs against defendants. An appeal was taken to the Appellate Court from this second judgment, and the judgment has been affirmed, as will appear by reference to the case of *Hacker* v. *Munroe & Son,* 61 Ill. App. 420. The present appeal is prosecuted from such judgment of affirmance.

The appellees made the boilers and attachments at their factory in Pennsylvania, and sold and delivered

them to the Lewis Steel Sheet and Tin Plate Company, an Illinois corporation, engaged in building a tin plate and steel sheet plant in Joliet, Illinois. D. Trevor Lewis held an official position in this company, and in July, 1891, went to the office of appellees in Pittsburg for the purpose of buying boilers for the mill to be erected in Joliet. In August, 1891, J. Davis Lewis, president of the company, had a conversation with R. Munroe, Jr., one of the appellees, and there closed the contract for the boilers. By the terms of the contract the company was to pay $1261.00 cash down, and give a note for $1700.00. On October 26, 1891, the boilers and attachments, etc., were shipped on board the cars to said Lewis Steel Sheet and Tin Plate Company at Joliet. Although $1261.00 was to be paid down, nothing had been paid when the boilers reached Joliet. The company had no money to pay for the boilers. Nobody was at Joliet to give the note for $1700.00. The company was insolvent and unable to pay the freight on the boilers and attachments.

Some property owners in Joliet, interested in the establishment of the tin plate mill upon and near their property, made an agreement with the tin plate company and the Lewises, by the terms of which the Lewises agreed to bring to Joliet a corporation having a paid-up capital stock of not less than $500,000.00, and to erect upon twenty acres of land, offered by the property owners, a mill for the manufacture of tin plate and sheet steel; and said property owners agreed to donate said twenty acres of land to be deeded to the said Lewises, but the deed to be held *in escrow* until the completion of the said mill. By the terms of said agreement said property owners also agreed to pay to the said Lewises the sum of $20,000.00 to be expended for the benefit of the plant. The original agreement thus referred to was made on February 24, 1891.

A supplemental agreement was entered into between the tin plate company, and J. Davis Lewis, and Nathaniel

D. Lewis, of the first part, and said property owners, including one Thomas M. Creevy, of the second part, which supplemental agreement was dated July 2, 1891. By the terms of the latter agreement it was recited, that the land owners feared that said parties of the first part would be unable to comply with the terms of their contract; and it was therein agreed that a part of the capital stock of said company should be placed in the hands of a trustee to secure the performance of said contract; and the property owners thereby agreed to pay over within a certain time the unpaid portion of said sum of $20,000.00 towards the completion of said plant, and to convey ten acres of land to a trustee, named Speer, until the terms of the contract should be performed.

When the boilers arrived in Joliet, said Creevy, one of said property owners, who was in possession of block 18, upon which the erection of the mill had been begun, was notified by the railroad company to take the boilers; and, thereupon, he paid the freight out of his own pocket, and placed the boilers on blocking, made of timbers, some fourteen inches higher than the walls where the legs of the boilers would eventually rest, but said boilers were in no way attached to any part of the boiler house or to any part of the brick walls thereof.

Creevy testified, that he took the boilers and placed them on the land for the purpose of saving them for the appellees, as appellees had received no pay for them. Some arrangement was afterwards made, in consequence of the failure of the tin plate company to erect the mill, by the terms of which the real estate in question was transferred to the wife of one of the Lewises, in trust for her brother and father, the brother-in-law and father-in-law of one of the Lewises, who bought the boilers from the appellees. No actual transfer of the boilers themselves and the attachments thereto was ever made to Mrs. Lewis. One of the property owners, interested in the property where the tin plate mill was to be erected,

and whose name was Zarley, had, prior to the organiza-
tion of the tin plate company, contracted to sell the land,
turned by him into the common pool and conveyed to
Speer as trustee, to the appellants herein. Such con-
tract of sale from Zarley to the appellants was of record.
Appellants filed a bill for the specific performance of the
contract, and obtained a decree requiring Zarley to con-
vey the premises to them, and he had conveyed the prem-
ises to them. The title of Mrs. Lewis was junior in right
to this claim of the appellants; but thereafter Mrs. Lewis
and her husband conveyed by deed whatever interest they
had to the appellants. There is no evidence, however,
that any transfer of any kind was made of the boilers and
attachments to the appellants.

GEORGE S. HOUSE, for appellants.

J. W. D'ARCY, and E. MEERS, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

*First*—Appellees claim, that the Lewis Steel Sheet
and Tin Plate· Company, through its officers, procured
the purchase of the boilers, smoke-stacks, plates and
attachments by fraudulent representations, knowing the
company to be insolvent, and without any intention of
paying for the same. They furthermore contend that,
by reason of such fraud, the sale was void, and no title
passed to the tin plate company; and that, therefore,
they had the right to rescind the sale, and bring replevin
for the possession of the property. Accordingly, upon
August 19, 1892, written notice was served upon the com-
pany by the appellees, that they rescinded the sale of
the property, and claimed to be the owners thereof.

The first question is as to the character of the sale.
Was the sale so fraudulent, that the appellees had the
right to rescind it and bring this action of replevin?
This question was submitted to the jury by instructions,

asked by both parties to this controversy and given on behalf of both parties. In addition to such instructions, the following interrogatory was submitted to the jury at the request of the appellants, and the following answer was made by the jury thereto: "First question: Did the Lewis Steel Sheet and Tin Plate Company or its officers or agents, at the time of the making and executing of the contract of sale of the boilers, boiler attachments and fixtures, of date August 20, 1891, in evidence in this case, intend not to pay said B. Munroe & Son for the same?— Answer: They did intend not to pay said B. Munroe & Son for the same." There was evidence tending to show, that the officers of the tin plate company did make false and fraudulent representations in order to obtain the goods in question. They reported that the tin plate company had a paid-up capital stock of $500,-000.00, when such was not the fact. They reported that the company had on deposit in banks in Joliet the sum of $25,000.00, when they had no deposit whatever in such banks. Whether or not the tin plate company obtained the goods with the intention not to pay for them was a question of fact to be determined by the jury from the evidence and from all the circumstances in the case. The jury and the lower court's have found this question of fact against appellants, and, therefore, we are precluded from considering it.

*Second*—The next question in the case is, whether or not the appellants were *bona fide* purchasers for value of the property in question from the original vendee, the tin plate company, or those holding under such company, without notice of the fraudulent character of the sale, and of the rights of the appellees arising out of the rescission of the sale. This also was a question of fact, which was submitted to the jury by instructions asked by, and given for, both parties. In addition to such instructions, the following special interrogatories were submitted, at the request of the appellants, to the jury:

"Second question: At and just before the service of the writ of replevin in this case were the defendants in this case the *bona fide* purchasers for value of the boilers, boiler attachments and fixtures in controversy in this case, and entitled to the possession thereof?—Answer: No." "Third question: At and just before the service of the writ of replevin herein were the defendants in the actual possession of the boilers, boiler attachments and fixtures in controversy in this case under a *bona fide* purchase for value from some person other than the plaintiffs in this case?—Answer: No." The judgment of the circuit court, based upon the verdict thus rendered by the jury, and the judgment of the Appellate Court affirming such judgment of the circuit court, are conclusive upon us as to the second question of fact.

*Third*—A third question was submitted to the jury by the instructions given for both parties, and that question was, whether the property replevied was attached to the real estate in such a way as to be a part thereof, and so as to pass by the deed of the real estate itself. This question also has been found by the verdict of the jury and by the judgment of the lower courts against the appellants.

What has already been said is sufficient to dispose of the present case, and necessarily leads to the affirmance of the judgment of the Appellate Court. But we will proceed to notice some of the assignments of error made on behalf of the appellants, so far as they are urged upon our attention by appellants' counsel in his brief. It is not claimed by counsel, that the court below committed any error in the admission or rejection of evidence. It is urged, however, that some of the instructions given by the court below were erroneous.

The second instruction given for the appellees is complained of. That instruction is as follows:

"If you believe from the evidence that, at the time of the sale of the boilers and fittings in question by the plaintiffs to the Lewis Steel Sheet and Tin Plate Com-

pany through its officers, the said Lewis Steel Sheet and Tin Plate Company, through its officers, had no intention or purpose of ever paying for such boilers and fittings, then this would constitute such fraud on the plaintiffs as would give them the right, under the law, to rescind such contract of sale of such boilers and fittings; and in determining as to whether the Lewis Steel Sheet and Tin Plate Company did or did not, at the time of the purchase of said boilers and fittings, intend to pay for them, you may take into consideration the statements, if any, of the officers of such company made by them, or either of them, to the seller at or before the time of said sale, as to its financial standing and ability to pay the purchase price therefor, and all other facts and circumstances disclosed on the trial."

The objection made to this instruction is, that it omits all consideration of a transfer of the property to a third party for value before the vendor attempted to rescind the sale. It is true, that the instruction omits any reference to the question whether or not the appellants were *bona fide* purchasers for value of the property in question. But the jury were expressly told in the third, ninth and tenth instructions, given for the appellees, and in instructions 17 and 18, given for the appellants, that the right of the appellees to rescind the contract of sale and reclaim the property was conditioned upon the finding by the jury, that the property had not passed into the possession of a purchaser in good faith for value before the same was replevied. In view of what was thus stated in other instructions, the jury could not have been misled by the omission complained of in the second instruction. All the instructions taken together must be considered as one charge.

Counsel for appellants also complains of the third instruction given for appellees, which is as follows:

"If you believe from the evidence that, at or before the time of the bargain and sale of the boilers and fittings

in question in this case by the plaintiffs, J. Davis Lewis and D. Trevor Lewis were officers of the Lewis Steel Sheet and Tin Plate Company, and if you further believe from the evidence that, for the purpose of inducing the plaintiffs to make a sale of such boilers and fittings, the said J. Davis Lewis and D. Trevor Lewis made false and fraudulent representations of the financial ability and responsibility of the said Lewis Steel Sheet and Tin Plate Company, and if you further believe from the evidence, that the plaintiffs believed and relied upon the representations of the said officers, and were deceived thereby, and were thereby induced to make shipment of the boilers and fittings in question, and that said officers then had, and acted with, the fraudulent intent and purpose that said boilers and fittings should not be paid for, then the plaintiffs would be entitled to rescind such contract of sale and to reclaim the said boilers and fittings from any one not an innocent purchaser of the same for value, unless the jury should believe from the evidence that the said boilers and fittings had become part of the real estate, before plaintiffs attempted to reclaim the same by replevying them in this case."

It is said in criticism of this instruction, that it requires the purchaser from the fraudulent vendee merely to have knowledge of the fraud practiced by the vendee in the purchase of the goods from the original vendor. It is said that, even if the purchaser from the fraudulent vendee knew of the fraudulent character of the purchase, the possession by the fraudulent vendee would justify the purchaser in buying the property. The contention of counsel for appellants is, that the sale from the appellees to the tin plate company, even though fraudulent as claimed, was not void but voidable, and that whether it should be set aside depended altogether upon the exercise by the appellees of their election to rescind the sale. Counsel says, that knowledge must be brought home to the purchaser from the fraudulent vendee of the election

of the original vendor to rescind the sale, and that the property cannot be reached in the hands of such purchaser, until notice is brought home to him of the exercise by the original vendor of his right to rescind the sale. Without entering into any discussion as to the soundness of this contention, it is sufficient to say, that, if it be admitted to be sound, the evidence does show the giving of the notice which counsel claims to have been necessary.

Before the appellants came into possession of the property in question, the agent of the appellees informed the agent and attorney of the appellants, that he had served a written notice upon the tin plate company and upon J. Davis Lewis, the president thereof, rescinding the sale and claiming the ownership of the property.

Under the law as laid down by this court, the instruction is correct, so far as it states that plaintiffs would be entitled to reclaim the boilers and fittings from any one not an innocent purchaser of the same for value.

In *Henshaw* v. *Bryant*, 4 Scam. 97, we held it to be a rule clearly deducible from the authorities, "that where a person, who knows himself to be insolvent, by means of fraudulent pretenses or representations, obtains possession of goods under a pretense of purchase with the intention not to pay for them, but with the design to cheat the vendor out of them, a court of chancery will set aside the sale and order a return of the goods if they have not passed into the hands of a *bona fide* purchaser; or the vendor may bring replevin or trover for them."

In *Patton* v. *Campbell*, 70 Ill. 72, we again said: "We understand the rule to be, that if a party, knowing himself to be insolvent or in failing circumstances, by means of fraudulent pretenses or representations, purchases goods with the intention not to pay for them, but with the design to cheat the vendor out of his goods, such facts would warrant the vendor in rescinding the contract for fraud, and would justify him in recovering possession of

the property by replevin, where the goods had not in good faith passed into the hands of third parties."

In *Schweizer* v. *Tracy,* 76 Ill. 345, where the facts showed a fraudulent purchase of goods from certain wholesale dealers in clothing, named Mack, Stadler & Co., and executions were levied upon them while the goods remained in the hands of a fraudulent vendee, we said: "Had the vendee, before the reclaiming of the goods by Mack, Stadler & Co., sold them to an innocent purchaser for value, no doubt, under the decisions of this court, the purchaser would have acquired a valid title to the goods." (See, also, *Jennings* v. *Gage,* 13 Ill. 610; *Michigan Central Railroad Co.* v. *Phillips,* 60 id. 190; *Young* v. *Bradley,* 68 id. 553; *Gray* v. *St. John,* 35 id. 222; *Bowen* v. *Schuler,* 41 id. 192; *Ryan* v. *Brant,* 42 id. 78; *Kitson* v. *Farwell,* 132 id. 327).

Counsel for appellants criticises the fourth instruction given on behalf of the appellees. That instruction is as follows:

"The court instructs the jury that one of the material issues of this case is, whether the boilers and fittings in question passed by deed of the real estate to the defendants as fixtures to the real estate, or were, at the time of the execution and delivery of such deeds, personal property only. If the jury believe from the evidence in this case, under the instructions given you, that the boilers and fittings in question were not so attached to the said real estate as to become fixtures thereto, but were personal property only, then the same did not pass by conveyance of the real estate."

This instruction merely states that the boilers and fittings would not pass by a deed conveying real estate, unless they were attached to the real estate so as to become fixtures. The instruction does not assume to say, that the title to the personal property may not have passed by delivery thereof independently of the conveyance by deed. A defendant has no right to complain of

error in an instruction given for the plaintiff, when like error appears in the instructions given at the defendant's request. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614). If, therefore, the fourth instruction is erroneous, in holding that personal property would not pass by the deed, unless it was attached to the real estate so as to become a fixture thereof, appellants cannot complain of such error, because they embodied the same idea in instructions asked by them and given for them. Instruction No. 20, asked by the appellants and given for them, is as follows:

"Property, which has been attached to and become a part of real estate, is not the subject of replevin; and if the jury believe from the evidence in this case, that, at the time of the issue and service of the writ of replevin herein, December 21, 1892, the defendants were the owners and in the actual possession of block 18,   *   *   *   and that, prior to that time, the property in controversy, or any part thereof, had become attached to and made a part of such real estate, then as to such property so attached and made a part of the real estate, the jury will find in favor of the defendants."

The same requirement, that the jury should find whether or not the property in question was attached to the real estate, is embodied in instructions 22, 24, 25, and 26 given for the appellants.

In none of the deeds, or instruments in writing, brought to our attention in the case, does any specific intention of the parties appear as to whether the property in question should be regarded as personalty or as real estate. The books lay down the rule that, in such cases, the effort of the court will always be to ascertain the intention of the parties and to give it effect. Where no specific intention is apparent, such property as that here in controversy will pass or not, as between grantor and grantee, according as the same is or is not in law part of the realty. (Ewell on Fixtures, pp. 292, 294, 295, 310). Here, the court instructed the jury, that, in determining the

character of the property in controversy as to whether the same was fixtures or not, the following tests should be applied to the evidence:

*First*—Whether the boilers and fittings in question were actually annexed to the realty or something appurtenant thereto.

*Second*—Their application to the use or purpose to which that part of the realty, where they were situated, or with which they were connected, was appropriated.

*Third*—The intention of the parties, who placed the said boilers and fittings where they were situated, when taken by the plaintiffs in this suit, as to whether they were to be permanent accessions to the freehold or not. (Ewell on Fixtures, p. 293). This instruction presented to the jury the tests, which the law requires in determining the question submitted to them.

Counsel for appellants objects to the sixth instruction given for the appellees, upon the ground that it omits to call the attention of the jury to the question whether or not the property had passed to a purchaser in good faith. But as this idea was embodied in so many of the other instructions given on both sides, the defect could have caused appellants no injury.

The objection made to the tenth instruction, given for the appellees, is substantially the same as the objection made to the third instruction already considered; and, what has been said in reference to the third instruction, disposes of the objection made to the tenth.

Having thus carefully considered the grounds for reversal set up by counsel for appellants in his brief, we have come to the conclusion that we ought not to disturb the judgments of the courts below. Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, having heard this case in the Appellate Court, took no part in its decision here.