(May 21, 1910.)

GEORGE T. MILLER, as Administrator With the Will
Annexed of the Estate of CARY A. CORYELL, De-
ceased, ELLA F. PHILLIPS, NORA B. McDOLE,
ALICE E. DENBURGER, and HATTIE WAUGAMAN,
Appellants—A. W. PHILLIPS, Intervenor and Appel-
lant, v. WILLIAM F. KETTENBACH, FRANK W.
KETTENBACH, LEWISTON · NATIONAL BANK,
IDAHO TRUST COMPANY, COLBY, CORYELL &
HOWE LUMBER CO., J. HOWARD HOWE, C. W.
COLBY, LOUIS DIETHER, W. B. HAYWARDS, W.
M. HAURY, and A. W. HAWKINS, Respondents.

[109 Pac. 505.]

ADMINISTRATOR—CLAIMS AGAINST ESTATE—LEGAL REMEDY AT LAW—
EQUITABLE RELIEF—CONTRACT OF GUARANTY—LIABILITY OF DE-
CEASED THEREON—CHARGES OF COLLUSION.

(Syllabus by the court.)

1. An action in equity cannot be maintained to release the lia-
bility of an estate upon a contract of guaranty made by the de-
cedent, when there exists a legal remedy at law, either affirmative
or defensive, which would be adequate, certain and complete.

2. A court of equity will not decree the release of a guarantor
upon the contract of guaranty unless special and peculiar circum-
stances are shown to exist which could not be shown as a defense
in an action at law based upon such contract of guaranty.

3. Where C. signs a joint and several contract of guaranty guar-
anteeing the payment of promissory notes, and afterward dies,
and an administrator is appointed, and the holder of such notes
files the same as claims against the estate of C., and full oppor-
tunity is given to contest such claims upon any legal or equitable
ground by the administrator, heirs or creditors of said estate, such
administrator, heirs or creditors of said estate cannot afterward
maintain an action in equity against the holder of said notes for
the purpose of releasing said estate from its liability upon said
contracts of guaranty, upon the ground that a conspiracy was
entered into between the holder of such notes, the administrator
of said estate and the stockholders of the principal debtor, whereby
property belonging to the principal debtor was transferred to the
holder of such notes at less than its actual and true value and

the purchase price thereof improperly applied upon such indebtedness.

'APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

An action to release an estate from its liability upon a contract of guaranty entered into by the decedent. *Affirmed.*

John O. Bender, for Appellants.

Only by a distinct suit brought in equity can all of these matters be tried and determined and can all of the necessary and proper parties be made parties to the action. The fact that these claims are characterized as a probate matter does not clothe this fraudulent transaction with the character of such probate matter. It is a distinct matter in itself, and must be brought in a separate suit where full and complete relief may be had.

James E. Babb, for Respondents.

Appellants claiming that the action is one to secure discharge from promissory notes, as guarantor of three thereof and as maker of another thereof, and the action being begun after all the notes were past due and while proceedings were pending which appellants were defending, and where appellants can make their defense, it results that they have no cause of action. (*County of Ada v. Bullen Bridge Co.,* 5 Ida. 188, 95 Am. St. 180, 47 Pac. 818, 36 L. R. A. 367; *Lewis v. Tobias,* 10 Cal. 578; *Smith v. Sparrow,* 13 Cal. 569; *Shain v. Belvin,* 79 Cal. 262, 21 Pac. 747; *Taylor v. Ford,* 92 Cal. 419, 28 Pac. 441.)

STEWART, J.—This is a most comprehensive case, comprehensive in extent of record, in the extent of the briefs and in the manifold questions presented upon the argument. Counsel for appellant opens the discussion of this case with the following statement:

"This action is brought to release a guarantor from the payment of certain promissory notes, on the ground that the payee of said notes participated in the fraudulent conveyance of the principal debtor's property.

"It is neither an action to set aside a conveyance, on the ground that it was made with intent to defraud creditors, nor an action to participate in the distribution of a fund with other creditors, on the ground that other particular creditors were preferred; and hence we do not attempt to presume that the plaintiff is a judgment creditor or a lienholder of the principal debtor, the Colby, Coryell & Howe Lumber Company, Ltd. (nor do we ask that the plaintiff, the estate of Cary A. Coryell, deceased, be allowed to participate in the distribution of the receipts of such conveyance with the other creditors), but we claim that the Lewiston National Bank, the payee of these promissory notes, is a party to this fraudulent transaction, and for that reason the estate of Cary A. Coryell, deceased is released from the contract of guaranty of the payment of said notes."

This statement of the purpose of the action is repeated in different parts of the brief and especially reiterated in the reply brief, and we shall treat the questions from this standpoint. The object and purpose of this action, then, is to cancel and release the estate of Cary A. Coryell from liability upon a contract of guaranty, indorsed upon certain notes executed by the Colby, Coryell & Howe Lumber Co.

On December 29, 1905, the lumber company executed a note payable on demand to the Lewiston National Bank in the sum of $10,000. Indorsed upon said note was the following guaranty: "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof. C. W. Colby, J. Howard Howe, C. A. Coryell."

On March 30, 1906, the lumber company executed a note payable on demand to the Lewiston National Bank in the sum of $10,000. Indorsed upon said note was the following guaranty: "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice

of nonpayment thereof. C. W. Colby, C. A. Coryell, J. Howard Howe, Lewis Diether."

On June 13, 1906, the lumber company executed a note payable on demand to the Lewiston National Bank in the sum of $5,000. Indorsed upon said note was the following guaranty: "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof. J. Howard Howe, C. A. Coryell, Lewis Diether, C. W. Colby."

In this opinion we shall refer to the Colby, Coryell and Howe Lumber Company as the lumber company, to the estate of C. A. Coryell as the estate, and to the Lewiston National Bank as the bank.

On March 2, 1907, Cary A. Coryell died in Lewiston, Idaho, and on April 30, 1907, J. Howard Howe was appointed administrator. On November 16, 1907, the Lewiston National Bank presented to J. Howard Howe, as administrator, said three notes as claims against the estate of Cary A. Coryell. Before Howe resigned he allowed such claims and afterward upon protest of the heirs of the estate the allowance was set aside and the validity of such claims reached this court. Howe resigned as administrator April 30, 1908, and Geo. T. Miller was appointed as such administrator. Upon a reversal of said cause said claims finally passed to judgment as claims against the estate of Cary A. Coryell in the district court of Nez Perce county, on November 19, 1909, in which the district court rendered judgment in favor of the bank against the estate for the sum of $38,865.58. An appeal was taken from that judgment to this court and this court has affirmed said judgment. (16 Ida. 201, 101 Pac. 723.)

The respondent contends that inasmuch as this is an action brought for the purpose of releasing the estate upon the contract of guaranty for the payment of the said notes and commenced after the maturity of such notes, and while proceedings were pending for the collection of said notes against the estate in the probate court, in which action full opportunity was given to appellants to make any defense they might have against the enforced payments of said notes,

that this action cannot be maintained. If this position of respondent is correct,· then it is unnecessary to consider or determine the manifold other questions presented by appellant..

This action was commenced March 26, 1909, long after the maturity of said notes and after said notes had been filed as claims against the estate, and after heirs of the estate had protested against their allowance.

In the case of *County of Ada v. Bullen Bridge Co.,* 5 Ida. 188, 95 Am. St. 180, 47 Pac. 818, 36 L. R. A. 367, in discussing the right to maintain an action in equity to cancel a written instrument, this court said:

"Where the invalidity of an instrument appears on its face, or where there is no danger of the instrument passing into the hands of an innocent holder, and where there is an adequate remedy at law, a court of equity will not take jurisdiction and decree the cancellation of such instrument. (Story's Equity Jurisprudence, sec. 700a; *Atlantic Delaine Co. v. James,* 94 U. S. 214, [24 L. ed. 112].) In *Ada County v. Gess,* 4 Ida. 611, 43·Pac. 71 (which was an application for an injunction to restrain the payment of certain county warrants), the court holds that there was a complete and adequate remedy at law, and therefore equity could not be invoked. (See, also, *Morgan v. Board,* 4 Ida. 418, 39 Pac. 1118; *Rogers v. Hays,* 3 Ida. 597,· 32 Pac. 259; *Clark v. Dayton,* 6 Neb. 192.)"

In that case the court comments upon and approves the decision in the case of *Farmington Village Corp. v. Sandy River Nat. Bank,* 85 Me. 46, 26 Atl. 965, as follows:

"That was a bill in equity praying for a perpetual injunction against the defendants, enjoining them from negotiating or delivering certain bonds issued by said corporation. It is there held that a court of equity, in a proper case, has full power to order the cancellation of bonds or other written instruments. But that it is a power which the court in its discretion will exercise with care, and only in accordance with what the court believes to be proper and right under the

circumstances, and that such power will not be exercised where the *legal remedy,* either affirmative or defensive, would be adequate, certain and complete.   To the same effect is *Atlantic Delaine Co. v. James,* 94 U. S. 207 [24 L. ed. 112],. and *Town of Glastenbury v. McDonald,* 44 Vt. 450.''

In *Ada County v. Bullen Bridge Co., supra,* the court also quotes with approval from *Lewis v. Tobias,* 10 Cal. 578, as follows:  ''While if we recognize the principle invoked by the respondent, we must necessarily admit that in every case in which the payer of a note, or bond, or other money security has a defense to it, though purely legal, we must admit him, at his pleasure, into a court of equity, deny the holder a trial by jury, and permit the payer to take the place of the actor in a proceeding to test his liability.   We see no necessity for such a principle, and we think it would produce only confusion, and that it starts with a denial of a positive right of the holder.   If the holder unreasonably delays to sue, the payer may force him to do so under the statute.''   The case of *Lewis v. Tobias* is affirmed in *Smith v. Sparrow,* 13 Cal.. 569, and in *Shain v. Belvin,* 79 Cal. 262, 21 Pac. 747.

The case of *Taylor v. Ford,* 92 Cal. 419, 28 Pac. 441, was an action under the statute to determine an adverse claim which the defendant asserted against the plaintiff by a promissory note.   The defendant filed an answer and cross-complaint which was in form a complaint upon the note, and praying for judgment against the plaintiff for the amount due thereon.   The plaintiff answered the cross-complaint setting up want of consideration and other defenses, and the court held that the issues thus joined were triable by a jury in the ordinary course of law; that the action was a common-law action upon a promissory note.

But counsel for appellant contends that the principle announced in these cases does not apply to the facts of this case.   He contends, first, that the action is not to cancel a written instrument, and, second, that the rights and equities, alleged in the complaint are of so peculiar and unusual character as to take the case out of the ordinary rule in such cases.   The complaint filed by Geo. T. Miller, administrator,.

is very lengthy, and after alleging the making of the notes, the death of Coryell, the appointment of the administrators, the organization of the lumber company and the names of the stockholders and their respective interests, it then alleges that the bank presented to J. Howard Howe, as administrator of the estate of Coryell, its claim based upon the promissory notes involved in this action, and that the administrator indorsed his allowance on said claims, and also the probate judge made the same allowance and thereafter vacated such allowance. Then follow the allegations with reference to the appeal taken to the district court, the hearing in the district court and the appeal to the supreme court; that on the 20th day of May, 1908, Miller, the administrator of the Coryell estate, brought an action against the lumber company and its stockholders, praying for an injunction against the disposition of the corporate property, and also asked for a receiver, the action in the district court upon the application for an injunction and the appointment of a receiver and the dismissal of such a lien. The complaint then alleges that on or about March 10, 1909, the defendants sold and conveyed all property belonging to the lumber company to the defendant, Will F. Kettenbach, for the sum of $18,000; that no notice was given to the stockholders of the intention of the corporation to make such sale, or to its board of directors or to any other person, and that defendants conspired and confederated together to transfer the property to said Will F. Kettenbach to cheat and defraud the plaintiff and other stockholders and directors of said corporation, and that the bank is interested with Kettenbach in said conveyance and that said purchase was not made in good faith, and that the consideration of $18,000 has not been paid and that the conveyance was made for the purpose of vesting all of said defendants with the ownership of said property, and that the purchase price will not pay twenty-five cents on the dollar of the indebtedness of the lumber company.

Afterward an amendment was offered and allowed to the complaint which alleged that the $18,000 was given to Frank W. Kettenbach and Howe; that the lumber company was not

a going concern and could not carry on business by reason of the sale, and that thereafter Frank W. Kettenbach and Will F. Kettenbach sold a portion of said property for about $40,000 and still hold a portion of said property of the value of at least $35,000; that thereafter Frank W. Kettenbach and J. Howard Howe sold and disposed of the remaining portion of said property of said company not sold to W. F. Kettenbach, and paid the receipts therefrom to said Idaho Trust Company; that said sales and each of them were made for the purpose of paying the receipts therefrom to said Frank W. Kettenbach, Howe and said banks.

The prayer of this complaint asks that the defendants be estopped from denying the allegations contained in the answer filed in the action for an injunction, and the appointment of a receiver and denying that the estate and property of the lumber company are of the value of $156,440.97, and denying that Will F. and Frank W. Kettenbach, the Lewiston National Bank, the Idaho Trust Company, J. Howard Howe and A. Hawkins be held as trustees of said property and the value thereof for the creditors and stockholders of the corporation, and that they be directed to account for said property and be charged with said amount; that an order be made directing all creditors of the lumber company to appear and file their claims, and that such claims be determined and that defendants be directed to pay and discharge the same, and that the stockholders appear and show their respective share, and after the creditors have been paid, that the stockholders be paid the balance remaining of said fund.

Answers were filed by the defendants which put in issue the allegations of the complaint as to the fraudulent and collusive transfer alleged and the value of the property, and alleging that the property purchased was at its full value, and that Kettenbach paid therefor the sum of $18,000, and in addition thereto paid and discharged other obligations and charges against said property and lumber company in the aggregate amount of $55,000, and that the transfer was made in good faith on the authority of the board of directors with full notice.

A complaint in intervention was also filed by A. W. Phillips, which alleged that he was a creditor of the Coryell estate, and then alleged substantially the same facts as are alleged in the complaint, and the prayer was that the notes involved in this case be satisfied and discharged, and for other equitable relief. The same counsel appeared for both the original plaintiff and the plaintiff in intervention.

The findings of the court are very lengthy and deal with many questions which were not in issue under the pleadings, and relate to matters which appeared in evidence; and the court in substance finds that the sale of the lumber company's property to William F. Kettenbach was fully authorized by the company, made in good faith, and that he paid therefor the aggregate of about $52,000, which was the full market value of said property; that the sale was publicly noticed, full and fair opportunity given to anyone to bid at such sale; that such sale was not made collusively or for the purpose of defrauding either the creditors or stockholders of the company. And upon these findings the court entered judgment dismissing the complaint and complaint in intervention and giving respondents judgment for costs.

It is somewhat difficult to reconcile the allegations of the complaint and the complaint in intervention with the statement of counsel for plaintiff as to the nature and character of this action. From the allegations of the complaint and the complaint in intervention it would seem that the object and purpose of the action is to set aside the sale and transfer made by the board of directors of the lumber company of its property to Kettenbach, on the ground of fraud, inadequacy of purchase price, lack of notice of intention of the lumber company to sell. But counsel for appellant insist that the action was not brought and is not prosecuted for that purpose, no doubt making this contention by reason of the fact that it may be questioned whether the plaintiffs show such interest as would entitle them to maintain an action to set aside such transfer. Accepting appellant's contention as to the purpose of the action, we see no peculiar facts in this case which take it out of the ordinary rule of law as announced in the cases

heretofore cited. We are unable to discover, and counsel have not pointed out, any reason why a defense might not have been interposed to such notes when filed as claims against the estate, based upon the ground that the estate was no longer liable upon said notes, and had been released from such liability by reason of the alleged fraudulent acts which are now made the basis of this action. When the bank filed the notes as claims against the estate of Coryell, the bank relied upon the contract of guaranty. If a state of facts existed which in law released the estate from liability, such facts could have been shown in the probate court in defense to the allowance of such claims. Under the statute of this state, equitable defenses may be plead as a defense in an action at law, and even if there were peculiar equitable considerations which it was necessary to plead as a defense to such notes, the same were permissible under our statute.

This question seems to be very fully covered by the provisions of Rev. Codes, secs. 5667 and 5668. By the former, "All issues of fact joined in the probate court must be tried in conformity with the requirements of chapter 2 of this title, in cases of contest of wills, and in all such proceedings the party affirming is plaintiff, and the one denying or avoiding is defendant. Judgments therein on the issues joined, as well as for costs, may be entered and enforced by execution or otherwise by the probate court as in civil actions." By the latter section, "If no jury is demanded, the court must try the issues joined. If, on written demand, a jury is called by either party, and the issues are not sufficiently made up by the written pleadings on file, the court, on due notice to the opposite party, must settle and frame the issues to be tried, and submit the same, together with the evidence of each party, to the jury, on which they must render a verdict. Either may move for a new trial upon the same grounds and errors, and in like manner, as provided in this code for civil actions." Where, therefore, issues are joined in the probate court, triable by a jury, and no demand is made that a jury be called, then such issues are tried by the court. If, however, a jury is demanded and the court is of the opinion that the

issues are not sufficiently made, the court is directed to settle and frame the issues to be tried and submit the same with the evidence to the jury. There is no statutory reason which would prevent pleading an equitable defense in the probate court just the same as it may be plead in the district court; and if an equitable defense is plead in the probate court, it should be tried in the same manner as if plead in the district court, and when the statute extends to all heirs and creditors and all persons interested in the estate an opportunity to appear and contest claims filed against such estate, it thereby extends to such persons the right to plead as a defense to such claims any matter which will defeat or avoid such claims. Thus a remedy at law is provided, which in this case would have been adequate and sufficient to have entitled the appellants to plead as a defense against the allowance of the claims the facts which appellants now rely upon as entitling them to equitable relief in this action.

But counsel for appellant contends that such facts could not have been plead as a defense in the probate court because interests of other parties are involved, and there is no method by which such parties could have been brought into the probate court for the purpose of adjudicating their interests. An examination of the facts alleged, however, does not disclose that it would have been necessary to have brought into the probate court any additional parties in order to have determined whether the bank by its acts or conduct, and in collusion with other parties, had done acts or committed a wrong or fraud against the estate which in equity or law released the estate from its contract of guaranty as indorsed upon such notes. The only relief demanded in this case is against the bank; that is, that the estate be released from its contract of guaranty, and the only one who claimed any right under the contract of guaranty was the bank. Such could have been urged in the probate court as a defense to the allowance of such claims. And while it appears from the allegations that other parties aided the bank in the alleged fraudulent transaction, yet such parties were not necessary parties to the determination of the question whether the bank

had entered into collusion with such persons for the purpose of fraudulently acquiring the property of the principal debtor, and thereby committed such wrongful acts as in equity or law would prevent it from enforcing the contract of guaranty.

We have disposed of this case upon the theory maintained by the appellant upon this appeal, and while there are a number of other questions which counsel has discussed in his brief, a consideration of such questions becomes of no consequence under the view we have taken of the nature of the action. If property belonging to the lumber company was disposed of fraudulently or not in accordance with law, and thereby the bank profited by such transaction and failed to give proper credit upon the notes involved in this case, such facts could and should have been presented as a defense when such notes were filed as claims against the estate.

The judgment is *affirmed.* Costs awarded to *respondents.*

Sullivan, C. J., concurs.

AILSHIE, J., Dissenting.—I do not think there is any good reason, either under the statute or the rules of practice and procedure, why the plaintiff cannot maintain this action, and I am therefore constrained to dissent from the views of the majority on this question.

In the first place, the plaintiff has no plain, speedy or adequate remedy at law, and if he is entitled to any relief whatever, it must be by reason of the application of the rules of equity to the particular facts of the case. He contends that the injury alleged has accrued by reason of the defendants conspiring and confederating together to defraud the estate represented by the plaintiff out of its share of the property owned by Colby, Coryell and Howe Lumber Co. The only method by which the plaintiff could secure any relief in this case in a court of law is by reason of the provisions of our constitution and statute abolishing all distinctions between actions at law and suits in equity. This change, however, does not abrogate the application of the principles of equity to the facts of any given case. The equitable prin-

ciple is still as applicable as if it were to be applied in a court of purely chancery jurisdiction.

As I understand the facts of this case as pleaded by the plaintiff and disclosed by the record, the cases of *Ada County v. Bullen Bridge Co.* and *Ada County v. Gess,* and the other cases cited from this court, are wholly inapplicable. In *Ada County v. Bullen Bridge Co.,* relief in equity was denied on the ground that the plaintiff had a plain, speedy and adequate remedy at law, either by affirmative action or as a defense to an action on the pretended obligation. *Ada County v. Gess,* and the other cases cited from this court, turned upon the same rule and principle. It will at once be seen that that principle is not applicable here. There is no known action at law whereby the plaintiff could obtain the relief sought by this present action. His cause of action appeals purely and solely to the equitable jurisdiction of the court. It is true that equitable defenses may be pleaded to actions at law, but it is not every case where an equitable defense can be pleaded that a failure to plead it is a bar to recovery in an independent suit in equity. The very facts of this case illustrate the unwisdom of attempting to apply the rule which seems to be announced by the court in this case. Here the fraudulent transactions alleged and from which the plaintiff seeks relief were consummated on the 10th day of March, 1909. On the other hand, these notes had been presented to the administrator on November 16, 1907. They had been allowed by the administrator, and subsequently on the application of certain of the heirs the allowance was vacated and set aside. As early as March 27, 1908, the heirs filed exceptions to the account of the administrator, which account included these specific notes, and the matter was continuously litigated in the probate court and the district court, and in this court until the 9th day of April, 1909, on which latter date this court affirmed the judgment of the district court, and held that the claims were still pending in the probate court for a hearing on the objections made by the heirs. According to the pleadings in the present case, the cause of action set forth had not accrued up to the date of appeal to

this court prosecuted by the bank involving the allowance of this identical claim.

As no other question is considered in the majority opinion, I have not examined the record for the purpose of ascertaining whether the judgment should be affirmed or reversed on any of the other questions presented by the appellant. It is unnecessary and useless for me to enter into any consideration of any further questions, for the reason that the court has disposed of the case on the specific ground that the plaintiff cannot maintain this action.