J. C. LAMBERTSON, Appellee, v. NATIONAL INVESTMENT & FINANCE COMPANY, Appellant.

**SALES: Remedies of Purchaser—Optional Remedies.** A vendee who
1   has been fraudulently induced to purchase property may exercise one of three remedies, to wit:

1. He may, within a reasonable time, offer to place the vendor *in statu quo*, and, when the vendor refuses, keep his tender good, and ask a *court of equity* to cancel and rescind the contract and give him a judgment for the price paid.

2. He may himself, within a reasonable time, do the canceling and rescinding of the contract, by offering to place the vendor *in statu quo*, and, when the vendor refuses, keep his tender good, and sue *at law* for the purchase price.

3. He may affirm the contract and sue *at law* for the damages suffered by him.

**EVIDENCE: Other Offenses or Transactions—Fraud.** On an issue of
2   specific fraud, other related and nonremote transactions of a fraudulent character are admissible on the question of motive and intent.

**Headnote 1:** 13 C. J. pp. 395, 611. **Headnote 2:** 22 C. J. pp. 747, 748.

*Appeal from Clarke District Court.*—HOMER A. FULLER, Judge.

FEBRUARY 10, 1925.

REHEARING DENIED SEPTEMBER 29, 1925.

ACTION at law, based upon a claim of fraud in the sale of corporate stock, to recover the purchase price. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Crist & Dyer* and *Dale & Harvison,* for appellant.

*O. M. Slaymaker* and *R. E. Killmar,* for appellee.

STEVENS, J.—I. Appellee commenced this action in the court below to recover the sum of $20,000, with legal interest, which he alleged he was induced by the fraud of appellant to

1. SALES: remedies of purchaser: optional remedies.

pay for shares of stock in the National Investment & Finance Company, now Burns Brothers Company. The fraud charged is the alleged false representations of appellant "that the said company was fully organized and in operation and was solvent, and that the said stock which he would receive was worth and was of the full value of $20,000." Written subscriptions for the stock were signed by appellee.

The answer to the petition denies the allegations thereof, and alleges that appellee, with knowledge of the facts, by his action and conduct ratified, confirmed, and approved all of the matters of which he complains, and is thereby estopped from maintaining the action.

The briefs and argument of counsel cover a wide field, but their final concessions reduce the controversy to little more than the question of appellee's right to rescind the contract by notifying appellant of his election to do so, and offering to place it *in statu quo,* before the commencement of an action at law to recover the sum paid.

It is the claim of appellant, and the argument of counsel proceeds upon the theory, that a party to a contract voidable on the ground of fraud in its inception has two remedies: one, to commence an action in equity for its cancellation and rescission; and the other, to prosecute an action at law for damages, the election of one necessarily precluding the other. It is the further contention of appellant that the measure of damages in an action at law is the difference in value between what was received under the contract and the price paid, except where

nothing of value is received, in which case the sum paid is the measure of damages.

As opposed to the theory of appellant, appellee contends that a party to a contract voidable because of fraud practiced upon him in its procurement, may maintain an action at law to recover the sum paid or property parted with on account thereof, by giving notice to the other party of his election to rescind the contract and offering to restore the *status quo.*

It is elementary, except in those jurisdictions in which the reform procedure has been adopted, that jurisdiction of actions for the cancellation or rescission of contracts upon the grounds of fraud, mistake, or other recognized grounds for such relief, is exclusively in equity. The reasons for this rule are fundamental and obvious. It is likewise a familiar and well established rule, as stated by Pomeroy, that:

"The exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either *affirmative* or *defensive,* which the defrauded party might obtain, would be adequate, certain, and complete." Pomeroy on Equity Jurisprudence (4th Ed.), Section 914.

See, also, *Watson v. Bartholomew,* 106 Iowa 576; *County of Ada v. Bullen Bridge Co.,* 5 Idaho 79 (47 Pac. 818); *Buck v. Ward,* 97 Va. 209 (33 S. E. 513); *Big Huff Coal Co. v. Thomas,* 76 W. Va. 161 (85 S. E. 171); *Krueger v. Armitage,* 58 N. J. Eq. 357 (44 Atl. 167); *Haydon v. St. Louis & S. F. R. Co.,* 222 Mo. 126 (121 S. W. 15); *Seymour Water Co. v. City of Seymour,* 163 Ind. 120 (70 N. E. 514); *Miller v. Kettenbach,* 18 Idaho 253 (109 Pac. 505); *Cable v. United States Life Ins. Co.,* 191 U. S. 288 (48 L. Ed. 188).

Precedent to the commencement of this action, appellee offered to return the shares of stock purchased, and demanded the return of the purchase price. The case was tried by appellee and submitted by the court to the jury in the court below upon the theory that a disaffirmance of the contract was thereby effected, and appellee was permitted to recover the full sum paid. The evidence tended to show that the stock was not only not worthless, but that it had value. Manifestly, this is not an

action for the rescission of the contract, and the discussion by counsel of the subject of election of remedies need be given no consideration. Unless appellee is entitled to recover upon his theory of the law, a reversal must necessarily follow. It seems to us that the question is not an open one in this state, as well as in other jurisdictions.

Pomeroy divides equitable remedies into three classes, and on the question before us he says:

"Those which the legal procedure recognizes, but does not *directly* confer, and the beneficial results of which it obtains in an indirect manner. A familiar example is the relief of rescission or cancellation. A court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be canceled, and renders a decree conferring in terms that exact relief. A court of law entertains an action for the recovery of the possession of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages; and although nothing is said concerning it, either in the pleadings or in the judgment, a contract or a conveyance, as the case may be, is virtually rescinded; the recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here, the remedy of cancellation is not expressly asked for, nor granted by the court of law; but all its effects are indirectly obtained in the legal action."

Proceeding further, in a note to the portion of the section quoted, he says:

"It would perhaps be more correct to say that the legal judgment proceeded upon the assumption that one of the parties had himself rescinded the contract or conveyance prior to the suit, and that he was justified in so doing; but this explanation does not alter the result or modify the statement of the text. In either theory, the legal procedure *recognizes* the rescission *as a fact*, and its benefits are secured *indirectly* by the judgment; as in actions by defrauded vendors to recover the goods or their value." Pomeroy on Equity Jurisprudence (4th Ed.), Section 110.

The rule thus stated was specifically recognized by this court in *Olson v. Brison*, 129 Iowa 604, as follows:

"Ordinarily, before commencing an action at law to recover

the price paid, the vendee must give notice to the vendor of his election to rescind, and offer to return the thing purchased. This is for the reason that the suit is for the consequences of rescinding, and is based on the ground that it has been effected. Technically, plaintiff's right to recover must be perfect when the suit is begun. But for the necessity of a tender, the commencement of the action for the consideration paid would be a sufficiently definite disaffirmance of the contract, and an election to rescind.''

In *Watson v. Bartholomew,* supra, we said:

''If plaintiff had given some specific property for the lot, and, on a rescission, desired to have it reconveyed to him, equity would have been the proper forum; but that is not this case. If plaintiff desires to rescind, and has grounds for so doing, he needs only to tender back a deed for the lot, and he then has a right of action at law. And where, as in this case, he asks only a money judgment against defendants, his action can be at law only.''

To the same effect are *Rose v. Eggers,* 148 Iowa 306; *Cox v. Cline,* 139 Iowa 128; *Clapp v. Greenlee,* 100 Iowa 586; *Kuehl v. Parmenter,* 195 Iowa 497. The same rule prevails in other jurisdictions: *Union Nat. Bank v. Mailloux,* 27 S. D. 543 (132 N. W. 168); *Hacker v. Monroe,* 176 Ill. 384 (52 N. E. 12); *Siltz v. Springer,* 236 Ill. 276 (85 N. E. 748); *Merritt v. Ehrman,* 116 Ala. 278 (22 So. 514); *Royal v. Goss,* 154 Ala. 117 (45 So. 231); *Hall v. Bell,* 143 Wis. 296 (127 N. W. 967); *Bruner v. Miller,* 59 W. Va. 36 (52 S. E. 995).

The cases cited by appellant from this jurisdiction (*Brainard v. Holsaple,* 4 G. Greene 485; *Relf v. Eberly,* 23 Iowa 467; *Twogood v. Allee,* 125 Iowa 59; *Fagan v. Hook,* 134 Iowa 381; *Weseman v. Graham,* 157 Iowa 430; *Pardoe v. Jones,* 161 Iowa 426; *Shuttlefield v. Neil,* 163 Iowa 470; *Miller v. Conn,* 193 Iowa 458) go no further than to affirm the general doctrine that equity has exclusive jurisdiction of all actions for the cancellation or rescission of contracts, and that, where one party has been induced to enter into a contract by the fraud of the other, and has parted with money or property, he has the election of two remedies: (1) to rescind the contract within a reasonable time, by offering to place the other party *in statu quo,* and to

commence an action in equity for a decree of cancellation; or (2) to affirm the contract, and prosecute an action at law for damages. In none of them was the right of the defrauded party to rescind the contract by restoring or offering to restore the *status quo,* and to bring an action at law for the recovery of the sum paid, involved.

Courts of equity are not jealous of their jurisdiction to cancel and annul contracts upon the ground of fraud, where their jurisdiction is concurrent, and an adequate remedy exists at law. Where the latter remedy is available, as already pointed out, courts of equity ordinarily decline to take jurisdiction. This rule is not, however, without some exceptions, which are not now material. The reason for exclusive jurisdiction in equity for the cancellation or rescission of contracts is that courts of law cannot grant such relief. A court of law has no power to order a reconveyance of property, or to compel the defendant to restore the *status quo.* A money judgment would, in many cases, be inadequate, and the cancellation of the contract and the restoration of the *status quo* will alone effect justice between the parties. It is, of course, true that a contract, unless for some cause it is voidable at the election of one of the parties, can be rescinded without the aid of a court of equity, by the mutual consent of the parties, in the manner provided therein, or by acquiescence of one in the offer of the other to rescind. A court of equity would have granted relief to appellee in the form of a money judgment, if the fraud alleged were proved, but would have further provided in its decree for the cancellation of the contract, and thereby formally relieved him of all of the consequences thereof. But this was accomplished in the present action. The jury to whom the issues of fact were submitted, found that the execution of the subscriptions for the stock was induced by fraud. This resulted in relieving appellee from all of the consequences thereof, as effectually as would have a decree in equity. The submission of a different measure would have involved the same issues of fraud, and no appeal to the extraordinary jurisdiction of a court of equity was necessary.

What we have already said sufficiently disposes of all questions raised touching the instructions, as well as of most of the grounds of the motion filed at the close of plaintiff's case, and

renewed at the close of all the testimony, for a directed verdict. One of the grounds of the motion was that the verdict is not sustained by the evidence. Nothing would be gained by a review of the evidence on the issue of fraud. A careful examination of the record leads us to the conclusion that the evidence was sufficient to justify the submission of this issue to the jury. It may be that the case made by appellee is not a strong one, but the finding of the jury on disputed evidence is conclusive upon us.

II.   Complaint is made of the admission by the court of testimony over the objections of appellant. The rulings complained of go to the question of other transactions claimed to

2. EVIDENCE: other offenses or transactions: fraud.

be fraudulent; to the price received for stock subsequent to the date of plaintiff's subscription; to the relation of J. R. Burns to the appellant company; to the fact that appellant accepted second mortgages in settlement for stock; to permitting the witness Neal to testify that appellant, in his opinion, never had a loan or farm department, and that it was his understanding that J. R. Burns would eventually become president of appellant company; to permitting said Neal to testify to the value of the stock in 1922; to permitting testimony as to the state of appellee's health, and that no dividends were received; and to directing a witness to testify, on cross-examination, as to the price at which certain stock was sold.

Evidence of other transactions of a fraudulent character, at or near the time of the transaction in question, is admissible, as bearing upon the question of motive and intent. *Elbert v. Mitchell,* 131 Iowa 598; *First Nat. Bank v. Wise,* 172 Iowa 24; *Farmers Nat. Bank v. Pratt,* 193 Iowa 406. It may well be doubted whether some of the other testimony referred to should have been admitted; but we are of the opinion that its admission was not so far prejudicial as to require a reversal. The issue of fraud was clear-cut, and constituted the principal question for the jury's decision. It is not at all probable that jurors were influenced in arriving at their conclusion by the matters referred to.

We have not discussed all of the matters argued by counsel; but such as we have not discussed are so closely related to

the questions sufficiently covered that we deem further consideration thereof unnecessary.

It is our conclusion that the judgment of the court below must be affirmed.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.